Frederick MILLER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2007–SC–000048–TG.

Supreme Court of Kentucky.

May 21, 2009.

Shannon Renee Dupree, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, David A. Smith, Assistant Attorney

General, Office of the Attorney General, Office of the Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, Frederick Miller, appeals his convictions of four (4) counts of third-degree rape and one (1) count of third-degree sodomy enhanced by one (1) count of being a Persistent Felony Offender (PFO), first-degree, as a matter of right. Ky. Const. § 110(2)(b). He was sentenced to twenty (20) years imprisonment.

## BACKGROUND

Appellant was charged with one (1) count of first-degree rape, seven (7) counts of third-degree rape, two (2) counts of third-degree sodomy, and of being a PFO, first-degree. These charges were the result of a sexual relationship, from March 2002 until October of 2002, between Appellant and a young girl, C.O., who was under the legal age of consent.

The two met in 2001 and eventually became friends. This friendship soon turned sexual, during the course of which C.O. was fifteen (15) years of age and Appellant was over twenty-one (21).

In September of 2002, Warren County police interviewed C.O. about the nature of the relationship. At first C.O. denied any sexual contact, but later admitted to it. Subsequently, she recanted, asserting she made up the allegations against Appellant. Then, C.O. recanted her recantation, acknowledging that she and Appellant did have a sexual relationship.

At trial, C.O. testified to several instances of sexual contact with Appellant. According to C.O., all of the instances were consensual, except one. Appellant was convicted of one (1) count of third-degree

rape, as a lesser included offense of the first-degree rape charge, three (3) of the six (6) third-degree rape charges,[1] one (1) count of the two (2) third-degree sodomy charges, and of being a PFO in the first-degree. He was acquitted of the remaining charges and sentenced to a total of twenty (20) years, from which this appeal follows.

Appellant alleges the court erred, in that: (1) the jury instructions lacked specificity and thus denied him a unanimous verdict and due process of law; (2) there was insufficient evidence to convict him of all the charges; (3) he was prejudiced by the court's refusal to instruct the jury on attempted sodomy in the third-degree; (4) his constitutional right to a speedy trial was violated; (5) the court erred in failing to dismiss the PFO charge; and (6) he was unduly prejudiced by the Commonwealth's penalty phase closing argument. Upon review, we reverse Appellant's convictions for reasons that shall be set forth herein.

## I. Improper Jury Instructions

Appellant first alleges the identical jury instructions for the six (6) counts of third-degree rape and two (2) counts of third-degree sodomy lacked such factual differentiation that they denied him a unanimous verdict and thus, due process of law, because there is no assurance that the jurors were voting for the same factually distinct crime under each of the indistinguishable instructions. Appellant concedes the issue was not properly preserved by his motion for directed verdict on grounds of insufficiency of the evidence. *Seay v. Commonwealth,* 609 S.W.2d 128, 130 (Ky.1980); *Combs v. Commonwealth,* 198 S.W.3d 574, 578–579 (Ky.2006).

---

1. One of the seven (7) counts of third-degree rape was dismissed prior to submission to the jury.

Therefore, Appellant requests palpable error review pursuant to RCr 10.26.

 Under RCr 10.26, an unpreserved error may be reviewed on appeal if the error is "palpable" and "affects the substantial rights of a party." Even then, relief is appropriate only "upon a determination that manifest injustice has resulted from the error." *Id.* An error is "palpable," only if it is clear or plain under current law. *Brewer v. Commonwealth,* 206 S.W.3d 343 (Ky.2006). Generally, a palpable error "affects the substantial rights of a party" only if "it is more likely than ordinary error to have affected the judgment." *Ernst v. Commonwealth,* 160 S.W.3d 744, 762 (Ky.2005). We note that an unpreserved error that is both palpable and prejudicial, still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice; in other words, unless the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable." *Martin v. Commonwealth,* 207 S.W.3d 1, 4 (Ky.2006).

 In this regard, "[i]t is [ ] elementary that the burden is on the government in a criminal case to prove every element of the charged offense beyond a reasonable doubt and that the failure to do so is an error of Constitutional magnitude." *Miller v. Commonwealth,* 77 S.W.3d 566, 576 (Ky.2002). Plainly, a defendant cannot be convicted of a criminal offense except by a unanimous verdict. Ky. Const. § 7; *Cannon v. Commonwealth,* 291 Ky. 50, 163 S.W.2d 15 (1942); RCr 9.82(1). Therefore, we have held that:

> [w]hether the issue is viewed as one of insufficient evidence, or double jeopardy, or denial of a unanimous verdict, when multiple offenses are charged in a single indictment, the Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense.

*Miller,* 77 S.W.3d at 576.

Prior to our recent decision in *Harp v. Commonwealth,* 266 S.W.3d 813 (Ky.2008), it was possible for an instructional error such as this to be "cured" by the Commonwealth's introduction and explanation of the identifying characteristics from which the jury could determine the existence of facts proving each of the offenses, rendering any error in the instructions harmless. *See Bell v. Commonwealth,* 245 S.W.3d 738, 744 (Ky.2008). Then, in *Dixon v. Commonwealth,* 263 S.W.3d 583, 593 (Ky. 2008), we recognized that "the arguments of counsel are not [now] sufficient to rehabilitate otherwise erroneous or imprecise jury instructions" because the arguments of counsel are not evidence. *Harp* further corrected dictum in *Bell* which supported the proposition that counsel could "cure" defects in identical instructions in closing argument, reaffirming the proposition that:

> a party claiming that an erroneous jury instruction, or an erroneous failure to give a necessary jury instruction [is harmless error], bears a steep burden because we have held that "[i]n this jurisdiction it is a rule of longstanding and frequent repetition that erroneous instructions to the jury are presumed to be prejudicial; [thus,] an appellee claiming harmless error bears the burden of showing affirmatively that no prejudice resulted from the error."

*Harp,* 266 S.W.3d at 818.

 Thus, it is now settled that a trial court errs in a case involving multiple charges if its instructions to the jury fail to factually differentiate between the separate offenses according to the evidence. *Combs,* 198 S.W.3d at 580. Here, because the trial court used identical jury instruc-

tions on multiple counts of third-degree rape and sodomy, none of which could be distinguished from the others as to what factually distinct crime each applied to, Appellant was presumptively prejudiced. Nor has the Commonwealth met its burden to show affirmatively that "no prejudice resulted from the error." *Harp*, 266 S.W.3d at 818. Therefore, the identical jury instructions, here, can not be considered harmless.

> [I]t must be evident and clear from the instructions and verdict form that the jury agreed, not only that [Appellant] committed one count of sodomy, but also exactly which incident they all believed occurred [and voted for]. Otherwise, [Appellant] is not only denied a unanimous verdict, but is also stripped of any realistic basis for appellate review of his conviction for sodomy. In other words, without knowing which instance of sodomy is the basis of his conviction, [Appellant] cannot rationally challenge the sufficiency of the evidence on appeal.

*Bell*, 245 S.W.3d at 744.

Being error, we now hold such instructional error as this to be palpable error, *Id.* "[T]he instructional error explained above … constituted palpable, reversible error." *Id.; cf. Commonwealth v. Davidson*, 277 S.W.3d 232, 233, 235–36 (Ky.2009).[2] Yet, that is not to say that every error in jury instructions rises to the level of palpable error.

As this Court noted in *Nichols v. Commonwealth*, 142 S.W.3d 683, 691 (Ky. 2004), an alleged error is not reviewable under RCr 10.26 unless (1) it is "[a] palpable error," and (2) "a determination is made that manifest injustice [has] resulted from the error." By definition, the word "palpable" means "[e]asily perceived; obvious." *Id. (quoting* American Heritage Dictionary of the English Language 946

(4th ed.2000)). Thus, a "palpable error" is an error that is easily perceived or obvious. *Id.* In *Brock v. Commonwealth*, 947 S.W.2d 24, 28 (Ky.1997), this Court "interpreted the requirement of 'manifest injustice' as used in RCr 10.26 … to mean that the error must have prejudiced the substantial rights of the defendant, i.e., a substantial possibility exists that the result of the trial would have been different." (internal citation omitted)

Here, it is obvious that the identical jury instructions used in this case patently failed to adequately differentiate the alleged *instances of multiple third-degree rape and sodomy*. Therefore, the error was palpable. Further, as the trial court's error "prejudiced the substantial rights of the defendant," the use of identical jury instructions resulted in manifest injustice, potentially depriving Appellant of his right to a unanimous verdict and to challenge the sufficiency of the evidence on appeal. *Id.*

Thus, we reverse Appellant's convictions for third-degree rape and sodomy, as well as, their enhancement by virtue of the finding of Persistent Felony Offender (PFO) first-degree and remand for a new trial consistent with this opinion.

Having found cause for reversal, we will consider such other issues as may call for dismissal, or are capable of repetition.

## II. Insufficiency of the Evidence

Appellant alleges there was insufficient evidence to convict him of four (4) counts of third-degree rape. Having reviewed the evidence under the appropriate standard, there is no merit to this argument as there was clearly sufficient evidence for the crimes actually charged. The error in this case was in the jury instructions, not the sufficiency of the evidence.

---

**2.** As *Davidson* is not yet final, this opinion must be held until it is.

■ The standard for determining whether the trial court has properly overruled a motion for directed verdict "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is the jury's responsibility to weigh the credibility of the evidence. *Clement Brothers Construction Co. v. Moore*, 314 S.W.2d 526, 530 (Ky. 1958).

> So far as the question of the sufficiency of the evidence offered here to sustain the conviction is concerned, we point to the fact that Kentucky follows the common law rule that the unsupported testimony of the prosecutrix, if not contradictory or incredible, or inherently improbable, may be sufficient to sustain a conviction.

*Stoker v. Commonwealth*, 828 S.W.2d 619, 624 (Ky.1992) (*quoting Robinson v. Commonwealth*, 459 S.W.2d 147, 150 (Ky. 1970)). We will further address these charges by reference to the location of the sexual encounter.

### a. Super 8 Incident

Appellant claims that the sexual encounter that, according to C.O.'s testimony, occurred at the Super 8 motel can not be classified or punished as third-degree rape. He contends that C.O. never testified to penetration or consent pertaining to the incident at the Super 8 motel and therefore the trial court should have granted Appellant's motion for a directed verdict on this charge. We disagree.

■ KRS 510.060 criminalizes third-degree rape. It requires penetration for a conviction; however, there is no requirement of testimony specifically describing penetration. "A fact may be proved by circumstances no less than by words, and this rule is applied to the question of penetration just as it is in other questions of fact arising in criminal cases." *Williams v. Commonwealth*, 202 Ky. 664, 261 S.W. 18, 19 (1924).

■ Here, the prosecutor asked C.O. if she and Appellant ever went to a hotel to have sex. C.O. testified that she and Appellant had sex in two (2) different hotels on three (3) separate occasions. C.O. did not offer testimony specifically describing penetration at the Super 8, but that is not required for a third-degree rape conviction. Given her previous descriptions of sex, C.O.'s testimony to the effect that she and Appellant had sex at the hotel was sufficient. *Id.* C.O.'s testimony was not contradicted, incredible, or inherently improbable. Viewing the evidence in a light most favorable to the prosecution, a motion for directed verdict was not warranted as there was sufficient evidence to support this charge of third-degree rape.

### b. Other Third–Degree Rape Charges

Appellant next argues that there was insufficient evidence to support the other three (3) counts of third-degree rape. These charges include two (2) sexual encounters at the Best Western Hotel and another incident on the hood of Appellant's car.[3] Yet, as in subsection (a), C.O.'s unsupported testimony is sufficient, in and of itself, to support a third-degree rape conviction. Thus, Appellant's arguments are without merit.

---

**3.** C.O. testified to an incident of consensual sex that occurred in Jackson's Orchard. C.O. testified that it was daytime, during the summer, her brother was home, and she arranged for Appellant to pick her up. Appellant pulled his car off the road and the two had sex on the hood of his car.

### c. One Count of Third–Degree Sodomy

■ Appellant next argues that there was insufficient evidence to convict him of third-degree sodomy and, thus, the trial court should have granted Appellant's motion for a directed verdict on this charge. We disagree.

At trial, C.O. testified to two counts of sodomy, one oral and one anal. Appellant argues that the oral sodomy testified to referred to an encounter which was outside of the time frame specified by the indictment. Admittedly, from review of the record, it appears that C.O. did not testify to the exact date of the oral sodomy; however, it seems C.O. got confused on the stand and did not remember the exact date of this incident.[4] We note, however, that when the prosecutor asked her if she ever gave Appellant oral sex in his car in the specified time frame, she answered in the affirmative.

Thus, pursuant to our holding in *Stoker*, this evidence is sufficient to support the charge of third-degree sodomy. 828 S.W.2d at 624. This is because it is the jury's responsibility to weigh the credibility of C.O.'s testimony. *Clement Brothers*, 314 S.W.2d at 530. A rational trier of fact could have believed the oral sodomy occurred during the time frame charged in the indictment. Thus, when C.O.'s testimony is taken in a light most favorable to the prosecution, a directed verdict was not warranted as there was sufficient evidence of third-degree sodomy. Therefore, Appellant's claim is without merit.

### d. Lesser Included Offense Pertaining to First–Degree Rape

■ Appellant's final insufficiency argument regarding the first-degree rape charge for the "bathroom incident," alleges

that there was insufficient evidence to support an instruction on the lesser included offense of third-degree rape. We address this issue as it is capable of repetition. However, the issue was not properly preserved, so we will review it under the palpable error standard. RCr 10.26.

During trial, C.O. testified to numerous consensual sex acts and one non-consensual sex act. The non-consensual act happened in the bathroom of Appellant's home. C.O. had refused to have sex with Appellant, but Appellant refused to take no for an answer. C.O. locked herself in the bathroom in an attempt to stop Appellant's sexual advances. Unfortunately, Appellant was nonetheless able to gain access to the bathroom. C.O. continued to tell Appellant that she did not want to have sex, but she was overpowered. C.O. testified that she told him no, and told him to stop, but he did not and eventually penetrated her.

The trial court instructed the jury on both first and third-degree rape for this incident. Rape in the first degree, however, occurs when the defendant engages in sexual intercourse with another: (1) *by forcible compulsion;* or (2) who is incapable of consent because they are physically helpless or less than twelve years old. KRS 510.040 (emphasis added). Rape in the third degree occurs when a defendant has consensual sexual intercourse with another person who is: (1) mentally retarded; (2) *less than sixteen years old, when the defendant is twenty-one years old or more* .... KRS 510.060 (emphasis added).

■ C.O.'s testimony was the only evidence admitted at trial. She testified that the intercourse was non-consensual, and Appellant testified that he never had sexu-

---

4. We have previously held that "proof of the precise dates on which the offenses were committed is not required of a child sexual abuse victim where the evidence is 'ample to separately identify the various offenses charged.' " *Miller*, 77 S.W.3d at 576 (*quoting Hampton v. Commonwealth*, 666 S.W.2d 737, 740 (Ky.1984)).

al contact with C.O. "An instruction on a lesser included offense is required *only if*, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky.1998) (*quoting Wombles v. Commonwealth*, 831 S.W.2d 172, 175 (Ky.1992)) (emphasis added).

We note, however, that it has long been held that the trier of fact has the right to believe the evidence presented by one litigant in preference to another. *King v. McMillan*, 293 Ky. 399, 169 S.W.2d 10 (1943). The trier of fact may believe any witness in whole or in part. *Webb Transfer Lines, Inc. v. Taylor*, 439 S.W.2d 88, 95 (Ky.1968). The trier of fact may also take into consideration all the circumstances of the case, including the credibility of the witness. *Hayes v. Hayes*, 357 S.W.2d 863, 866 (Ky.1962).

Therefore, having weighed the evidence in this case, the jury was entitled to believe the sexual encounter at issue was not forcible rape. It was within the jury's province to conclude Appellant and C.O. had "consensual" sex while she was under the age of consent, especially given the numerous consensual sexual encounters to which C.O. testified. Thus, under any standard, there was sufficient evidence to support the charge of third-degree rape.

### III. Failure to Instruct on the Lesser Included Offense of Attempted Sodomy in Third–Degree

Appellant next argues that, in relation to his third-degree anal sodomy charge, he was entitled to a jury instruction on attempted sodomy in the third-degree. Appellant claims that the evidence at trial supports this instruction because C.O. never testified to penetration. For the following reasons, we disagree.

"The trial court is required to instruct the jury on lesser included offenses when requested and justified by evidence." *Wombles*, 831 S.W.2d at 175 (*quoting Martin v. Commonwealth*, 571 S.W.2d 613, 615 (Ky.1978)). Here, however, the evidence did not support a lesser included offense.

At trial, C.O. testified that Appellant, "tried to stick it in her butt." A jury could reasonably infer that he attempted to penetrate her anus but she stopped him before that could happen. Appellant did not offer any evidence against this. In fact, he vehemently denies ever having any sexual contact with C.O. However, "[p]enetration is not a requirement under the sodomy statute." *Bills v. Commonwealth*, 851 S.W.2d 466, 470 (Ky.1993). The only requirement is contact. *Id.* Thus, our holding in *Bills* is dispositive.

C.O. testified Appellant tried to have anal intercourse with her, but she told him to stop because it hurt. Appellant made no attempt to refute C.O.'s testimony, he simply denied ever having sexual contact with her. Thus, an instruction on attempted sodomy is unsupported by the evidence and no error occurred.

### IV. Speedy Trial

#### a. Sixth Amendment

Appellant next alleges that his constitutional right to a fast and speedy trial, enumerated by the Sixth Amendment of the United States Constitution and KRS 500.110, was violated. We disagree.

Under both the United States and Kentucky Constitutions, a defendant's right to a speedy trial is analyzed under the four-prong balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The four factors to be considered in a speedy trial analysis are: 1) length of the delay; 2) reason for the delay; 3) defendant's asser-

tion of his right to a speedy trial; and 4) prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182.

### i. Length of Delay

■ Regarding the first factor, in this case we deem the thirty-five (35) month delay between the indictment and the beginning of the trial to be presumptively prejudicial. *See Bratcher v. Commonwealth*, 151 S.W.3d 332, 344 (Ky.2004) (holding an eighteen (18) month delay in a murder case to be presumptively prejudicial). "That prejudice, however, is not alone dispositive and must be balanced against the other factors." *Parker v. Commonwealth*, 241 S.W.3d 805, 812 (Ky. 2007). " 'Presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

### ii. Reasons for Delay

■ We now turn to the next factor of the *Barker* inquiry, the reasons for the delay. This is a fact-intensive analysis because "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Barker*, 407 U.S. at 522, 92 S.Ct. 2182. This is because "[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905).

■ Thus:

Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

We must look to the events that caused the delay to determine whether this factor weighs in favor of the prosecution or the Appellant.

### 2003

At the time Appellant was indicted for the charges at hand, he was already under a previous indictment for other unrelated charges.[5] In June 2003, the Commonwealth elected to try the previous indictment before addressing the indictment at hand. In July 2003, Appellant wrote a letter to the court informing it of his desire for a speedy trial. This request was premature for either indictment. Appellant had only been incarcerated for about five (5) months awaiting trial. After the trial court received the letter, in October of 2003, Appellant's original counsel, Nicholas Brown, withdrew from the case, citing irreconcilable differences with Appellant. In November 2003, Leslie Rudloff was appointed counsel. Shortly after being appointed, Rudloff was allowed to withdraw

---

5. Appellant was indicted three months prior to this indictment by a Warren County Grand Jury for Failure to Comply with the Sex Reg-istry and as a Persistent Felony Offender in the First Degree. He was ultimately sentenced to ten (10) years incarceration.

due to a breakdown in the attorney-client relationship. On November 10, 2003, Terry Boeckham entered an appearance as Appellant's attorney.

## 2004

In February 2004, Appellant was convicted for the first indictment. On February 5, 2004, a hearing was scheduled and a trial date was set for July 2004. Prior to the trial, on June 10, 2004, Boeckham asked for a continuance because his wife was having surgery. Appellant objected and requested to be appointed co-counsel in order to proceed with the trial on the scheduled date. In his appointment motion, Appellant asserted his right to a speedy trial, pursuant to the Sixth Amendment. On July 1, 2004, Appellant withdrew his motion. In August 2004, Appellant's counsel filed a motion to dismiss due to the complaining witness's recantation of her complaint. A hearing was scheduled for September 27, 2004, but the Commonwealth asked for a continuance because of conflicting trial dates in another court. The hearing was rescheduled for October 5, 2004, but, by that time, the complaining witness had recanted her recantation, causing Appellant's counsel to ask for a continuance. Another hearing on the matter was scheduled for November 22, 2004, which was rescheduled again for December 13, 2004. At the December hearing, the trial court set a tentative date for the hearing of Appellant's motion to re-notice its motions and, in addition, set a trial date for May 24, 2005.

## 2005

On January 24, 2005, the defense asked to re-notice its motions. A hearing to re-notice was set for March 1, 2005. Appellant was not transported on March 1, and this hearing finally took place on March 16, 2005. The next hearing was scheduled for March 31, 2005, but both parties agreed to cancel and reschedule it for April 29, 2005. On April 20, 2005, the Commonwealth asked for a continuance due to the retirement of the attending attorney, to which the defense had no objection. The parties again agreed to reschedule the next hearing to June 7, 2005 in an attempt to settle. In July 2005, Boeckham was replaced. There is no evidence on record as to why this happened. In August of 2005 a pretrial hearing was held. In September of 2005, the Commonwealth responded to Appellant's speedy trial motion.

The trial commenced on January 10, 2006.

## Analysis

 Reviewing the record, we find no deliberate attempt, on the Commonwealth's behalf, to delay or hamper the defense. The majority of these delays were caused by the Appellant and his counsel. Very few, if any, could be attributed to negligence and one, the failure to produce Appellant on March 1, 2005, could be attributed to overcrowded courts. However, *Barker* requires that we analyze all these delays together and decide where to place the weight. With the majority of the delays being appropriate, or caused by the defense, and only one actually caused by negligence or overcrowding, the trial court was acting within its discretion in refusing to weigh the delays heavily against the Commonwealth. While it is true that the delays were tedious and plentiful, on balance, however, we find that the reasons for the delay weigh in favor of the Commonwealth.

### iii. Assertion of the Right

 Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent

by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain.

The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Barker*, 407 U.S. at 531–532, 92 S.Ct. 2182.

Even though the two *pro se* motions Appellant claims to have filed are absent from the record, we will err on the side of caution and deem that Appellant did assert his right, satisfying this requirement. We note that the assertion of the right to a speedy trial is not dispositive, however, as "no single one of these factors is ultimately determinative by itself." *Gabow v. Commonwealth*, 34 S.W.3d 63, 70 (Ky.2000) (*overruled in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 60–61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)).

### iv. Prejudice to the Defendant

The final factor of the *Barker* analysis is the prejudice suffered by the defendant because of the delay.

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay,

the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker*, 407 U.S. at 532, 92 S.Ct. 2182.

The defendant's first enumerated interest is to prevent oppressive pretrial incarceration. Appellant argues that because he was incarcerated during the whole delay, this interest was infringed upon. We note, however, Appellant would have been incarcerated anyway as he was serving a ten (10) year sentence on a previous conviction. The oppressiveness of this incarceration is not what the Sixth Amendment was intended to protect. *See St. Clair v. Commonwealth*, 140 S.W.3d 510, 528 (Ky. 2004).

The second interest is to minimize anxiety and concern of the accused. It is apparent from the record that Appellant was getting anxious about his trial and wanted the trial to begin. We agree with Appellant that this interest was not protected. However, the delay was largely unattributable to the Commonwealth. The defense was responsible for much of the delay. Moreover, the Commonwealth is not responsible for the hesitancy of the complaining witness who recanted the allegations of sexual abuse, and then recanted her recantation.

█ The last, and most important of these interests, is to limit the possibility that the defense will be impaired because of delay. Appellant claims he was prejudiced by the delay because he could not call all of his witnesses. Yet, he does not give any details as to how the delay caused his witness to be unavailable. Our precedent clearly holds that speculative and generic claims are insufficient to support a claim of prejudice. *See Bratcher*, 151

S.W.3d at 345 ("Conclusory claims about the trauma of incarceration, without proof of such trauma, and the possibility of an impaired defense are not sufficient to show prejudice. As we noted above, a long delay, while creating 'presumptive prejudice' sufficient to continue the *Barker* analysis, does not necessarily create real prejudice to a defendant."); *see also Preston v. Commonwealth*, 898 S.W.2d 504, 507 (Ky.App. 1995) ("The possibility of prejudice alone is not sufficient to support the position that speedy trial rights have been violated. It is the burden of the defendant to establish actual prejudice."); *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (holding that the "possibility of prejudice is not sufficient to support respondents' position that their speedy trial rights were violated. In this case, moreover, delay is a two-edged sword. It is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden."). "A long delay, while creating 'presumptive prejudice' sufficient to continue the *Barker* analysis, does not necessarily create real prejudice to a defendant." *Bratcher*, 151 S.W.3d at 345.

Upon consideration of all the *Barker* factors, we find that Appellant was not denied his Sixth Amendment right to a speedy trial in this case.

### b. KRS 500.110

■ With respect to Appellant's claim that his right to a speedy trial under KRS 500.110 was violated, we have previously held, "that statute only applies when a defendant is incarcerated for one offense and a detainer has been lodged against him for another offense." *Gabow*, 34 S.W.3d at 69. Although Appellant alleges that a detainer was lodged against him in June of 2004, there is no evidence of this in the record. The record does reveal, however, that a detainer was filed against Appellant on September 9, 2005. The trial began on January 10, 2006, well within the 180 days provided for by KRS 500.110. Therefore, Appellant's KRS 500.110 claim is without merit. Thus, Appellant's right to a speedy trial was not infringed upon under either the Sixth Amendment of the United States Constitution or KRS 500.110.

### V. Failure to Dismiss PFO

■ Appellant next alleges the trial court erred in failing to dismiss the PFO indictment because the prior convictions relied upon failed to meet the requirements for purposes of PFO enhancement. We disagree.

■ "A review of the verdict forms and the potential interpretation the jurors gave them involves consideration of the instructions they were given. The inquiry we make involves what a 'reasonable juror' would understand the charge to mean." *Wilson v. Commonwealth*, 836 S.W.2d 872, 892 (Ky.1992) (*overruled on other grounds by St. Clair v. Roark*, 10 S.W.3d 482 (Ky. 1999) *citing Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)).

At issue is Appellant's case from the Franklin Circuit, case number 86–CR–190. There, Appellant was convicted of attempted first-degree sodomy and sentenced to fourteen (14) years incarceration. Appellant claims that the Franklin County jury failed to sentence him on the underlying felony and sentenced him solely as a second-degree PFO. However, after reviewing the verdict form from that case, it is apparent that the jury sentenced Appellant on the underlying felony as well. The Franklin County verdict form stated:

(a) We the jury find the Defendant, Frederick L. Miller, Not Guilty of being a Persistent Felony Offender in the 2nd degree. We fix his punishment on his

conviction of Criminal Attempt to Commit Sodomy in the 1st Degree, at ____ years confinement in the penitentiary. (b) We the jury find the Defendant, Frederick L. Miller, Guilty of being a Persistent Felony Offender, 2nd Degree, and fix his punishment at ____ years in the penitentiary.

A reasonable juror could have read this form and understood it to mean that the second choice was a conviction of the felony, with an enhancement of PFO second-degree.

Moreover, even if the jury from the Franklin Circuit is deemed to have sentenced Appellant solely on the PFO charge, it is still not reversible error. In *Montgomery v. Commonwealth*, 819 S.W.2d 713 (Ky.1991), we held that a jury's failure to set a penalty for the underlying offense did not violate the provisions of the PFO statute. "The error here, if there was one, was a procedural matter which we need not address in the absence of a contemporaneous objection." *Montgomery*, 819 S.W.2d at 721. Here, there was no contemporaneous objection in the Warren County proceedings, or in the Franklin County trial.

The trial court was correct in its ruling.

## VI. Improper Closing Argument

▮▮▮▮ Lastly, Appellant claims that he was denied his right to a fair trial because of an improper penalty phase closing argument by the prosecution. Appellant argues that "the prosecution meant to dehumanize him and instill the jury with fear and minimize its sentencing responsibility" when the prosecutor argued in the sentencing phase, "Mr. Miller is out of jail two years and he is raping children." Appellant did not object, leaving this issue unpreserved for review. Therefore, we review under RCr 10.26.

▮▮▮▮ "We reverse for prosecutorial misconduct in a closing argument only if the misconduct is 'flagrant' *or if each of the following are satisfied:* (1) proof of defendant's guilt is not overwhelming; (2) defense counsel objected; and (3) the trial court failed to cure the error with sufficient admonishment." *Barnes v. Commonwealth*, 91 S.W.3d 564, 568 (Ky.2002) (emphasis added). Here, none of these elements are satisfied. "[W]e must always consider these closing arguments 'as a whole' and keep in mind the wide latitude we allow parties during closing arguments." *Young v. Commonwealth*, 25 S.W.3d 66, 74–75 (Ky.2000) (*citing Wallen v. Commonwealth*, 657 S.W.2d 232, 234 (Ky.1983) and *Bowling v. Commonwealth*, 873 S.W.2d 175, 178 (Ky.1993)).

Given the wide latitude afforded the parties during closing argument, the prosecutor's closing argument during the sentencing phase was not flagrant on its face nor did it rise to the level of prosecutorial misconduct under the *Barnes* standard. Therefore, no palpable error appears.

## VII. Conclusion

For reasons that the jury instructions failed to particularize each of the offenses they were intended to represent, we reverse Appellant's convictions and remand for a new trial on all charges.

ABRAMSON, NOBLE, and VENTERS, JJ., concur. CUNNINGHAM, J., concurs in result only by separate opinion, with SCHRODER, J., joining that opinion. MINTON, C.J.; not sitting.

CUNNINGHAM, Justice, concurring in result only.

Our decision today is consistent with our most recent case of *Bell v. Commonwealth*, 245 S.W.3d 738 (Ky.2008), only if our finding of palpable error is unique to the facts of this case. For instance, as in *Bell*, where we held harmless error, if the defendant had been found guilty under all of

the identical instructions then there would be no palpable error. "Because the jury ultimately found Bell guilty of all five counts of sexual abuse, it can be rationally and fairly deduced that each juror believed Bell was guilty of the five distinct incidents identified by the Commonwealth." *Id.* at 744. When the jury, as here, finds the defendant guilty under three of the identical instructions, and not guilty on the other three, a different picture is painted. As stated in *Bell,* "[I]t must be evident and clear from the instructions and verdict form that the jury agreed, not only that Bell committed one count of sodomy, but also *exactly* which incident they all believed occurred. Otherwise, Bell is not only denied a unanimous verdict, but is also stripped of any realistic basis for appellate review of his conviction for sodomy." *Id.*

Furthermore, since here the jury found the defendant not guilty under three of the identical instructions, it is premature for us to do an analysis on the sufficiency of the evidence. We do not know exactly which criminal acts the jury unanimously found the defendant guilty of. Therefore, we should simply reverse and remand for a new trial without addressing the sufficiency of the evidence issue.

SCHRODER, J., joins this opinion.