CUNNINGHAM, J.,
DISSENTING:
With an abiding and profound respect for the members of the majority, I must fervently dissent.
A bright, articulate and pretty, little seven year old girl, we call Linda, testified that for a period of time covering the charge under the indictment, and while she was six years old, her step-father sexually abused her. The stepfather was entrusted with her care while her mother was deployed with the military overseas. That step-father is the Appellant.
With the assistance of pictures and anatomical dolls, Linda recalled how at least two or three times a week, Appellant would take her into his bed and sometimes have her commit oral sex upon him, and sometimes make her touch his penis. The multiple acts, occurring weekly over a five month period were always in his bed, at the same house and usually about the same times. There was nothing more distinguishable about these acts than that. No “specific, identifiable event.” No “notable date, while wearing particular clothing, or while attending a particular birthday party or other such event.... ” There was an awful redundancy to the perversion.
Our Supreme Court today is directing the prosecutor and trial judge to do that which is impossible to do — give vivid definition to each individual act.
*685 Justice Scott and I protested the fallacy of this requirement in Johnson v. Commonwealth, 405 S.W.3d 439, 461 (Ky.2013). We wrote in part:
The most disturbing result of our decision here today is that it will seriously impair the prosecutions and convictions of those charged with the molestation and rape of small children. A defendant is typically charged with one count of rape of a child under 12 years of age. A small four-year-old toddler testifies and, perhaps with the aid of anatomical dolls, describes the criminal acts committed upon him or her. The victim testifies that the act happened more than once— maybe weekly. It will be impossible for the prosecutor to nail down a certain one as identified by date and place in order to comply with the results of our decision here today.
Except for the age, this is exactly what we have before us. The ugly old chicken given flight in Johnson has come home to roost.
We will never see this case again. It will be impossible for it to be retried under the dictates of the majority.
Counsel for the Appellant did not object to the instructions given in this ease. Why should he? Instead of facing scores of charges of sodomy which would have been justified under the evidence, he faced only two with particularized manner of the offense. The majority today punishes both the prosecutor for showing admirable restraint in charging the Appellant, and the trial judge for giving the instruction agreed upon by the Appellant, yet rewards the defense lawyer for allegedly being asleep at the switch.
Just as it did in Johnson, we once again encourage the defense bar to blind side trial judges by simply remaining mute while the trial court gives instructions we now hold as “palpable error.” Again, as Justice Scott and I lamented in Johnson:
Our trial judges are being ambushed by such decisions as this one when we so lightly deem palpable error when the .mistake has not been preserved. We are watering down our palpable error standard with holdings such as this to the point that it behooves the defense lawyer not to object on jury instructions and just allow the trial court to walk— unwarned — onto the unanimity land mine.
Id. at 461.
A unanimous jury found that the small child we call Linda was sodomized by her step-father, not once, but numerous times. We are reversing the conviction under such terms as he will now go free. Therein, lies the “manifest injustice” in the majority opinion.
I appreciate the suggestion by the Majority — and as emphasized by Justice Abramson’s concurrence — that the legislature needs to give their attention to a “course of conduct” crime. If that would appease the majority and change future outcomes such as the one we have in this case, I welcome it. However, I would respectfully submit that we do not need legislative assistance to solve a problem we have ourselves created. Furthermore, since the unanimity issue arises under our own state constitution, any new crime created by our legislature is still going to run afoul of Section 7 of our constitution as it is now interpreted by the majority in this case.
The whole unanimity issue discussed in this opinion exploded upon the appellate scene within the last ten years or so. As noted in the Johnson majority, the “federal constitution’s requirement. of unanimity has been held not to apply to the states.” We recognize, however, that under Section 7 of our state constitution, a unanimous *686 decision by the jury has long been required in criminal cases.
Our Section 7 unanimity cases over the first 110 years of our constitution were fairly simple and straightforward. The 1942 Cannon decision and the 1951 Coomer case dealt with recalcitrant jurors who reported being coerced into a vote, thus undermining the unanimous verdict. Cannon v. Commonwealth, 291 Ky. 50, 163 S.W.2d 15 (1942); Coomer v. Commonwealth, 238 S.W.2d 161 (Ky.1951). Even the 1978 Wells case held that alternative methods of an assault case — intentional or wanton — was not a breach of the unanimity requirement.
I submit that we jumped the tracks in the Harp case, as well as in Miller v. Commonwealth, 283 S.W.3d 690 (Ky.2009). We focused on the wrong issue. Harp was charged with numerous counts of the same crime. These went to the jury with identical instructions. The jury found Harp guilty of all counts. While the wording is less than clear in Harp, it appears we reversed that case on the unanimity issue. And we have thrown Harp into our growing.line of unanimity cases. . ■ -
Miller is similar to Harp, except for one major difference. Miller was not convicted on all identical instructions, as Harp was. Miller was rightly-decided, I believe, for the wrong reason. It was not a unanimity problem. I respectfully submit that it was actually an appellate due process problem: Miller was denied his right to appeal because he did not know, from the jury verdict, which crimes he had been convicted. ■ ■ < . -
Miller dealt solely with the lack of unanimity of which crimes the defendant committed — not acts. Out of seven identical instructions for third-degree rape, Miller was convicted on only four. It was impossible to determine for which of the crimes the jury reached'unanimous verdicts. But there was no unanimity problem. The jury was unanimous in finding Miller guilty of some crimes, but not others. But which ones?
The critical issue in Miller and in many of our so-called “unanimity” issue cases is that the reviewing coürt cannot be certain which offense or offenses were committed — not whether the jury voted unanimously. So it is not a unanimity issue. It is a review problem.
I would respectfully submit that the reason we are just recently wrestling so much at the appellate level with the so called “unanimity question” is because we have mislabeled it. Section 115 of our state constitution states in part: “In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court ...” Not knowing for which crime you are convicted deprives one of any effective means to appeal.
The jury instruction on unanimity is simple. “The verdict of the jury must be in writing, must be unanimous and must be signed by one of you as FOREPERSON.” 1 Cooper, Kentucky Instructions to Juries (Criminal) § 2.07A (5th ed. 2006) (emphasis added). The jury is commanded only to reach a unanimous decision on the verdict.
There is no Section 115 review problem in this case.
Therefore, I strongly dissent.
Barber, J., joins.