# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: MARCH 14, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0554-MR

SHIRLEY VICKERY     APPELLANT

V.     ON APPEAL FROM BARREN CIRCUIT COURT
HONORABLE JOHN T. ALEXANDER, JUDGE
NO. 19-CR-00435

COMMONWEALTH OF KENTUCKY     APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

This case comes before the Court on appeal as a matter of right[1] by Shirley Vickery, the Appellant, from the judgment and sentence of the Barren Circuit Court. Vickery was charged with one count of first-degree sodomy, victim under twelve, continuous course of conduct. After a one-day trial, she was convicted by a jury and sentenced to thirty years in prison. Vickery argues on appeal that the trial court erred in failing to direct a verdict and in failing to instruct the jury on the lesser-included offense of sexual abuse in the first degree. Upon review, we affirm the trial court.

---

[1] Ky. Const. § 110(2)(b).

## I.    Facts

Vickery is the great-grandmother of the victim, A.C.[2] In July 2019, after A.C.'s stepmother and step-grandfather had independently observed sexually inappropriate behavior by A.C., her stepmother and her step-grandparents had a conversation with A.C. to see if A.C. had been touched inappropriately. Her stepmother believed that might be a cause of her behavior. During this conversation, A.C. disclosed that Vickery, her great-grandmother on her biological mother's side, had touched her. After informing her husband later that day, A.C.'s parents contacted local police to see what they needed to do. A.C. was taken to the hospital, an evaluation was conducted, and a forensic interview was arranged. No medical evidence was ever submitted at trial.

Vickery lived in Glasgow, and she was interviewed by Sergeant Charlie Eubank. He testified about his interview with Vickery which was recorded using a body camera. The video of this interview was played at trial. In that interview, Sergeant Eubank read Vickery *Miranda* warnings.[3] After this, Sergeant Eubank informed Vickery that A.C. had alleged Vickery had stuck her finger inside A.C.'s butt on multiple occasions. Although Vickery initially acted shocked and defensive, Sergeant Eubank prevailed upon her that this was not his "first rodeo," and asked, "How many times did it happen?" Vickery answered "twice," and stuck up two of her fingers. After reviewing the broad details of these incidents—such as the where, when, how, and why—Sergeant

---

[2] We use initials to protect the identity of minor victims.

[3] Vickery has not challenged the admission of this video at trial.

Eubank then suggested that the abuse had occurred numerous times. He then asked Vickery exactly how many times it happened, suggesting the numbers ten or fifteen. Vickery responded, "probably about ten."

At the time of trial, A.C. was ten years' old. She testified the sodomy occurred when she was six and seven years old. During direct examination, the Commonwealth engaged her in the following colloquy:

Commonwealth: Did she ever do anything to you that made you feel uncomfortable.

A.C.: Yes.

CW: And what was that?

A.C: She stuck her finger down in my butt.[4]

CW: Okay. She stuck her finger in your butt?

A.C.: [Nods head affirmatively.]

CW: Okay. Let's talk about the first time that happened to you. Do you remember how old you were the first time she stuck her finger inside your butt?

A.C.: I was six.

CW: Do you remember anything about what time of year it was?

A.C.: No, I don't.

CW: Anything about the weather? Was it cold or warm outside?

A.C.: It was cold outside.

CW: Okay. You said you were six years old. Where were you spending time with her the first time that this happened?

A.C.: Um, well, it was either at her work or her house or whenever she was watching me.

---

[4] This is a crucial quotation which we highlight because it is the focus of the appeal and both Vickery and the Commonwealth have misquoted this specific sentence by omitting the word *in.* Our review confirms that we have correctly quoted the testimony.

CW: Okay, the first time that it happened though do you remember where you were?

A.C.: No.

CW: Okay. Was anybody else around?

A.C.: No.

CW: No one else was around?

A.C.: [Shakes head in denial.]

CW: And can you tell me what happened?

A.C.: Um, she stuck her finger down my butt and she told me not to tell nobody [sic].

CW: Okay. Let's back up a little bit, okay? Where were you with Shirley? Were you sitting by her or sitting on her lap or what were you doing when she stuck her finger inside your butt?

A.C.: I was on her lap.

CW: And did you have clothes on or clothes off?

A.C.: Clothes on.

CW: Can you explain to me, [A.C.], how she was able to stick her finger inside of your butt if you had clothes on?

A.C.: She pulled my pants back and then she just stuck her finger down in my butt.

CW: Okay. And when you say, 'down in my butt,' I want to be clear about that, what we're talking about. Did her finger go inside of you?

A.C.: Yes.

CW: Okay. Would you be able, were you able to tell if she had her whole finger inside your butt or did you know?

A.C.: No.

CW: When she stuck her finger inside your butt, did she stick it in and take it out or was it there for a while?

A.C.: It was there for a while.

Although A.C. continued to testify, this is the only portion of her

testimony highlighted by Vickery and forms the basis of her appeal. After the

4

close of the Commonwealth's case, Vickery moved for a directed verdict, arguing that A.C.'s testimony was ambiguous about whether there was any penetration by Vickery's finger. Defense counsel believed A.C.'s testimony had only established a finger had gone "down my butt," and therefore, the evidence was sufficient for sexual abuse but not for sodomy. The Commonwealth responded that A.C.'s testimony was clear as to penetration, as well as Vickery's own interview with Sergeant Eubank. The trial court denied the direct verdict motion.

When it came time for jury instructions, Vickery requested a lesser-included offense instruction for sexual abuse in the first degree. Largely repeating the above argument, defense counsel insisted the jury could reasonably interpret A.C.'s testimony to have supported sexual contact, as defined by statute, but not that penetration had occurred. The Commonwealth opposed, again repeating the same argument as above. The trial court declined to give the instruction. The trial court reasoned that A.C. had testified to a finger going *in* her butt, and there was no requirement that she use correct medical terminology, such as the word anus; nor that she needed to use correct legal terminology, such as the word penetration. The trial court believed that the testimony presented an all-or-nothing proposition, and the jury could either believe sodomy had occurred or believe it had not occurred, but that there was no evidence to support mere sexual contact.

We now address the merits of the appeal.

## II. Analysis

The standard of appellate review for a denial of a directed verdict motion is "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Eversole v. Commonwealth*, 600 S.W.3d 209, 218 (Ky. 2020) (quoting *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). The trial court is required to assume the truth of the evidence presented and give all reasonable inferences, and resolve all reasonable doubts, in favor of the party opposing the motion. *Id.* at 217.

"Lesser-included offense instructions are proper if the jury could consider a doubt as to the greater offense and also find guilt beyond a reasonable doubt on the lesser offense." *Parker v. Commonwealth*, 952 S.W.2d 209, 211 (Ky. 1997) (citing *Skinner v. Commonwealth*, 864 S.W.2d 290 (Ky. 1993)). When the evidence presents an "all-or-nothing" proposition, however, a lesser-included offense instruction is not warranted. *Swan v. Commonwealth*, 384 S.W.3d 77, 100 (Ky. 2012).

Sodomy in the first degree requires deviate sexual intercourse. KRS[5] 510.070. There are two definitions of deviate sexual intercourse provided by KRS 510.010(1). The first—"any act of sexual gratification involving the sex organs of one person and the mouth or anus of another"—does not require penetration. *Mash v. Commonwealth*, 376 S.W.3d 548, 558 (Ky. 2012). The second, however, does require penetration by its very definition—"penetration

---

[5] Kentucky Revised Statutes.

6

of the anus of one person by any body part or a foreign object manipulated by another person." KRS 510.010(1). Sexual abuse in the first degree only requires sexual contact. KRS 510.110. Sexual contact is defined as "the touching of a person's intimate parts or the touching of the clothing or other material intended to cover the immediate area of a person's intimate parts[.]" KRS 510.010(7).

Vickery relies principally on *Mash* for her argument regarding the directed verdict. We stated in *Mash* that "[f]irst-degree sexual abuse is properly classified as a lesser included offense of first-degree sodomy. *Johnson v. Commonwealth,* 864 S.W.2d 266, 277 (Ky. 1993)." *Mash*, 376 S.W.3d at 558. We clarified that "[t]he distinction between the two offenses is the body part touched for purposes of sexual gratification[.] The additional element in a sodomy offense is the specific sexual or intimate parts involved, namely, the mouth or anus." *Id.* This is not the only distinction for the second definition of sodomy, which requires penetration by a body part or foreign object; therefore, *Mash* is not controlling here.

The fatal flaw in Vickery's argument is that she contends A.C.'s testimony established only that Vickery "stuck her finger **down her butt, not in her anus,** creating the distinct possibility that Vickery committed a crime less than Sodomy, 1st degree Victim Under 12 Years of Age in a Continuing Course of Conduct." This reasoning stems from the misquotation highlighted in Section I, where Vickery (and the Commonwealth) have misquoted A.C.'s statement that Vickery "stuck her finger down in my butt." By failing to

7

correctly understand A.C.'s testimony and omitting the word *in,* Vickery has perceived ambiguity where a correct understanding dispels any doubt. A.C.'s first statement of criminal conduct against Vickery was that she stuck her finger in her butt. The Commonwealth correctly understood that testimony in her colloquy, and frequently re-emphasized it in her questioning. When A.C. then described the conduct as "down in my butt," the Commonwealth asked her to clarify what exactly she meant by that phrase, asking if a finger had gone inside of her. A.C.'s response was an unequivocal "yes."

We have held that a victim need not use anatomical exactitude in their testimony and found that the use of the word "butt" is sufficient to support a sodomy charge even though the statute uses the word anus. *Miller v. Commonwealth,* 283 S.W.3d 690, 699 (Ky. 2009). We have also never required a victim use the word penetration to meet the evidentiary standard; indeed, "there is no requirement of testimony specifically describing penetration." *Id.* at 697. This is because a fact can be inferred as much by circumstances as by words. *Id.* Nonetheless, we conclude that A.C.'s use of the word *in* in her first statement, and her later affirmation that her phrase "down in my butt" was meant to be understood as a finger going inside her, certainly satisfies the evidentiary standard required to find deviate sexual intercourse under KRS 510.070 and 510.010(1). Finally, a victim's uncorroborated testimony is enough to support a conviction so long as it is not inherently improbable. *Robinson v. Commonwealth,* 459 S.W.2d 147, 150 (Ky. 1970). A.C.'s testimony in fact was not uncorroborated, as Vickery's interview with Sergeant Eubank

8

demonstrated she had confessed to inserting her finger in A.C.'s anus on numerous occasions, at least twice and up to ten times. Vickery did not testify in her own defense. Therefore, it was not clearly unreasonable for the jury to find guilt for first-degree sodomy, continuing course of conduct, under the evidence as a whole. The directed verdict was properly denied. *Eversole*, 600 S.W.3d at 218.

As to Vickery's second argument regarding the denial of the lesser-included offense instruction; we note that the argument at the trial court was based on the same argument heretofore addressed, that A.C.'s testimony was ambiguous. The trial court did not believe so, and we conclude that determination was correct. Consequently, we agree with the trial court that there was no evidence presented that supported a lesser-included offense instruction based merely on sexual contact. The evidence presented an "all-or-nothing" proposition, and a lesser-included offense instruction was not warranted. *Swan*, 384 S.W.3d at 100.

But Vickery offers a completely different argument before this Court that the denial of the lesser-included offense instruction created a jury unanimity issue. Relying on a perception of A.C.'s testimony as ambiguous, Vickery asserts that because of the failure to include a sexual abuse and sexual contact instruction, and because some of the acts A.C. described Vickery committing may have only constituted sexual abuse, it is possible "a juror mistakenly believed that the possible sexual abuse act was an act of sodomy . . . [and] chose that particular sexual abuse instance of conduct and an act of alleged

9

sodomy to arrive at the two instances of conduct required under KRS 501.100 .
. . ."

This alleged juror unanimity issue is not preserved. "On appeal, a party may only present those issues that were fully presented to the trial court and, further, *may not bring forward new legal grounds on appeal to challenge those errors.* This rule is a keystone of Kentucky appellate practice, and the policies undergirding it remain strong." *Henderson v. Commonwealth*, 438 S.W.3d 335, 343 (Ky. 2014) (emphasis added) (footnotes omitted). Nonetheless, even were we inclined to grant palpable error review, which has not been requested, under the standard affirmed in *Johnson v. Commonwealth*, 676 S.W.3d 405, 417 (Ky. 2023), we have no doubt that there is no substantial possibility of a different result had the lesser-included offense instruction been given. A.C.'s testimony that Vickery stuck her finger "down in my butt," her affirmation that she meant Vickery's finger went inside her, and Vickery's own confession, and the lack of any testimony to the contrary, all militate against that conclusion.

Vickery's conviction is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Ken Garrett


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General