RENDERED: SEPTEMBER 26, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0896-MR

RANDY KIPLING                                                      APPELLANT

v.
APPEAL FROM BOONE CIRCUIT COURT
HONORABLE JAMES R. SCHRAND, II, JUDGE
ACTION NO. 23-CR-00270

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, KAREM, AND McNEILL, JUDGES.

McNEILL, JUDGE: Randy Kipling ("Kipling") appeals from a Boone Circuit Court judgment convicting him of first-degree sexual abuse following a jury trial. Kipling argues the circuit court erred in denying his motion for a directed verdict and erred in instructing the jury on the lesser included offense of first-degree sexual abuse. Finding no error, we affirm.

**BACKGROUND**

On February 24, 2023, C.M. died of a methamphetamine overdose. The prior evening, C.M., Mark Ball ("Ball"), and Alexis Elam ("Elam") had been "hanging out" at Kipling's home, using methamphetamine. Following an investigation, Kipling was indicted for first-degree sodomy based on an allegation by Elam that she had walked in on Kipling having sex with a helpless C.M.

At trial, the Commonwealth's case against Kipling was based primarily on Elam's testimony, as there was no physical evidence of the crime. Elam testified that when C.M. arrived at Kipling's home that evening, he sat next to her and injected what she believed to be methamphetamine. Sometime later, C.M. took more methamphetamine when Kipling administered it to C.M. and Elam intravenously. Ball then made a mixed drink containing methamphetamine, and he, Elam, and C.M. drank it. At this point, they were all feeling "shaky", and Kipling (who appeared sober) took C.M. into his room to lie down.

Elam, worried about C.M., went to check on him several times that evening. The first time, Kipling and C.M. were on the bed. C.M.'s speech was "jittery" and incoherent, and he did not look well.

Another time, she found Kipling and C.M. naked, and it looked like they were having sex. C.M. was lying face down on the bed, with his head over a trash can and his feet on the floor. Kipling was standing behind him, "moving."

C.M. appeared to be having a seizure and puking up blood. He then went from shaking to limp.

On direct examination, Elam testified that she could see Kipling's penis, and it was moving in and out of C.M. However, on cross-examination, she was less certain, admitting she did not know whether there was penetration because she never actually saw the penis in the anus. Elam was also questioned about a statement she made to prosecutors that "she was really, really, high" and that she did not know if Kipling was having sex with C.M., but "he was standing behind him naked; he was either grinding on him or penetrating him." She was consistent, however, in her testimony that it appeared Kipling and C.M. were having sex—Kipling's body was moving like he was having sex.

Following the evidence, Kipling moved for a directed verdict, arguing that the evidence was insufficient to support a conviction for sodomy. The circuit court denied the motion. Ultimately, Kipling was acquitted on the sodomy charge but convicted on the lesser included offense of first-degree sexual abuse.[1] He was

---

[1] The circuit court's jury instruction on sodomy required the jury to find that Kipling "engaged in deviate sexual intercourse with C.M. by way of placing his penis in C.M.'s anus[.]" "As a general matter, penetration is not an element of first-degree sodomy." *Mash v. Commonwealth*, 376 S.W.3d 548, 558 (Ky. 2012). The statute simply requires *contact* between the sex organs of one person and the mouth or anus of another. *Id.* (citing *Miller v. Commonwealth,* 283 S.W.3d 690, 699 (Ky. 2009); KRS 510.070(1)(a)). Arguably, the court's jury instruction requiring penetration was an error. *Id.* However, any error benefitted Kipling "since it required the Commonwealth to prove a more specific act than what the first-degree sodomy statute requires." *Id.*

sentenced to two years in prison. This appeal followed. Other facts will be set forth as necessary below.

## ANALYSIS

Kipling first argues that the evidence was insufficient to convict him of first-degree sexual abuse, and the circuit court erred in denying his motion for a directed verdict. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991). "A directed verdict should not be granted if a reasonable juror could find that the elements of the offense were proven beyond a reasonable doubt." *Murphy v. Commonwealth*, 509 S.W.3d 34, 43 (Ky. 2017) (citation omitted). "In considering a motion for directed verdict, the trial court is required to draw all fair and reasonable inferences from the evidence in favor of the Commonwealth." *Id.* (citation and internal quotation marks omitted).

Under KRS 510.110, "A person is guilty of sexual abuse in the first degree when . . . [h]e or she subjects another person to sexual contact who is incapable of consent because he or she . . . [i]s physically helpless[.]" KRS 510.110(1)(b)(1). "Sexual contact" means "the touching of a person's intimate parts . . . [f]or the purpose of sexual arousal or gratification of either party[.]" KRS

-4-

510.010(7)(a). Kincaid contends the evidence of sexual contact was insufficient. We disagree.

Elam testified that she walked in on Kipling and C.M. naked. C.M. was lying face down on the bed with his feet on the floor, and Kipling was behind him, "moving in the motion as if he was having anal sex[.]" Elam was not certain they were having sex, but it looked like they were. Kipling "was either grinding on [C.M.] or penetrating him."

Based upon this testimony, it would not be clearly unreasonable for a jury to find Kipling guilty of first-degree sexual abuse. According to Elam, Kipling and C.M. were both naked, and Kipling was behind C.M., "grinding" on him. A reasonable juror could find that this act constituted sexual contact. *See Mash v. Commonwealth*, 376 S.W.3d 548, 560 (Ky. 2012) (noting that contact between a perpetrator's penis and a victim's buttocks "would constitute sexual abuse instead of sodomy."

Kipling argues that because Elam recanted her allegation that he was having anal sex with C.M. during cross-examination, her testimony is inadequate, standing alone, to support a conviction. In support, he cites several cases from other jurisdictions. However, these cases are not binding and not applicable to the present situation. Elam did not recant her testimony. She consistently stated her belief that Kipling and C.M. were having sex. She did concede she did not see

Kipling's penis penetrate C.M.'s anus, but she never denied what she thought she saw: Kipling and C.M. having sex. Any inconsistencies in her testimony were for the jury to weigh. *King v. Commonwealth*, 472 S.W.3d 523, 526 (Ky. 2015) ("Determining the proper weight to assign to conflicting evidence is a matter for the trier of fact and not an appellate court.").

Further, other evidence corroborated Elam's testimony. First responders testified that they found C.M. naked when they arrived on-scene, and Kipling was wearing only underwear. John Ginn, one of Kipling's roommates, testified that Kipling told him after the incident that he and C.M. were in bed naked and had planned to have sex that evening. Photos from the scene show a trash can at the bed corner and what looks like blood stains on the sheets, consistent with Elam's testimony that C.M. was lying on the corner of the bed with his feet on the floor and his head over the trash can and puking blood.

Yet Kipling contends that Elam can only say that it "looked like" Kipling and C.M. were having sex, and that is speculative and insufficient to sustain a conviction, citing *Crawford v. State*, 174 S.E. 335, 335 (Ga. 1934). In *Crawford*, the Supreme Court of Georgia held that a witness's statement that he saw a man on top of a woman and "he looked like he was in motion, looked like he was in the act of sexual intercourse[,]" insufficient to "show penetration or sexual intercourse such as is required in a charge of rape[.]" *Id.* at 335-36. However,

here, the jury did not need to find penetration to convict Kipling of first-degree sexual abuse. They only needed to find sexual contact.

Based upon Elam's testimony that she saw Kipling and C.M. naked, and Kipling was "moving . . . as if he was having anal sex with [C.M.]", and her admission that she never saw the penis go into the anus, along with the medical examiner's testimony that there were no injuries consistent with sexual assault such as tearing or bruising of the anus, a jury could reasonably believe that Kipling did not penetrate C.M., yet still subjected him to sexual contact. We find no error.

Kipling next argues the circuit court erred in instructing on the lesser-included offense of first-degree sexual abuse. We review a trial court's decision to provide a jury instruction for abuse of discretion. *Downs v. Commonwealth*, 620 S.W.3d 604, 613 (Ky. 2020). A trial court "must instruct the jury upon every theory reasonably supported by the evidence." *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015), *as corrected* (Aug. 26, 2015), *overruled on other grounds by University Medical Center, Inc. v. Shwab*, 628 S.W.3d 112 (Ky. 2021). As noted by Kipling, "[a]n instruction on a lesser included offense is appropriate if, and only if, on the given evidence a reasonable juror could entertain a reasonable doubt of the defendant's guilt on the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Osborne v. Commonwealth*, 43 S.W.3d 234, 244 (Ky. 2001) (citations omitted). Kipling contends there was no

rational basis for the jury to acquit him of sodomy and convict him of sexual abuse because there was no evidence of non-penetrative sexual contact. We disagree.

Elam testified that she walked in on Kipling and C.M. naked, and it looked like they were having sex. She clarified she did not see the penis go into the anus, but Kipling was moving like he was having sex with C.M. This testimony was consistent with her statement to prosecutors that Kipling "was either grinding on [C.M.] or penetrating him." A reasonable juror could have a reasonable doubt that Kipling's penis contacted or penetrated C.M.'s anus but believe beyond a reasonable doubt that Kipling subjected C.M. to sexual contact. Thus, we find no error.

## CONCLUSION

The Boone Circuit Court's judgment is affirmed.


VOTE




BRIEF FOR APPELLANT:

Eric G. Eckes
Cincinnati, Ohio

BRIEF FOR APPELLEE:

Russell Coleman
Stephanie L. McKeehan
Frankfort, Kentucky