## King v. McMillan.

Feb. 26, 1943.

C. B. Spicer for appellant.

J. B. Carter and Astor Hogg for appellee.

Prior to April, 1936, F. O. McMillan was engaged in the sawmill business in Harlan County, Kentucky, one area of land from which he obtained saw logs for the manufacture of lumber at his mill site is referred to in this record as the "Cawood" job. F. O. McMillan died in April, 1936, leaving unfinished a contract between him and appellant and plaintiff below, H. R. King, whereby the latter agreed to convert the timber on the Cawood job into sawlogs and deliver them to McMillan's mill yard where they could be sawed into lumber—the appellant to receive therefor compensation at the rate of $7 per thousand feet sawmill measure.

After F. O. McMillan's death a brother (the appellee and defendant below) A. Dale McMillan, purchased his brother's interest at the mill site referred to at public auction, made and consented to by those interested in his brother's estate. After that purchase defendant operated the plant, as his brother had theretofore done, under the assumed name of "McMillan Hardwood Company," but he was the sole owner. Plaintiff and appellant continued for some time thereafter to perform his contract with the deceased brother, with the approval and consent of appellee, defendant below. When plaintiff ceased working the Cawood job, under his contract referred to, he left that vicinity and did similar work elsewhere for another concern engaged in the same business. In the meantime appellee and defendant obtained timber rights on two other areas located in accessible distances from his sawmill site, and which are referred to in this record as the "Long Branch" and the "Short Branch" timber tracts. After he had so acquired them plaintiff sought re-employment by defendant to "log the timber" from the two latter tracts, and which is referred to in the record as the "Poor Fork" job. Between the two tracts forming that job was another timbered tract of land, referred to in this record as the "Metcalf" tract, the timber on which was not acquired, nor in any manner owned, by defendant at any time involved in the controversial questions presented by this record.

Terms were agreed upon by appellant and appellee, whereby the former contracted to log the timber from the Poor Fork job, as he had theretofore done with reference to the Cawood job, with slight alterations, among which was an increased price per thousand feet for the

labor. Plaintiff began the performance of the latter contract and continued at it for more than a year and then quit, but whether his ceasing to further prosecute the work was because of completing the job, or before it was completed, is not made clear from the evidence. At any rate, some two years after he quit that job he filed this action in the Harlan circuit court against defendant, alleging in his petition that he had furnished more logs to defendant's mill than the amount he had been paid for by defendant, and which applied to both the Cawood job and the Poor Fork job—the petition setting out the amount of logs delivered at the mill and the payments he had received, which were not equal to what he was entitled to under his contracts.

He furthermore alleged that the timber from the Poor Fork job also embraced the timber on the Metcalf tract, which, as we have said, was located between the two tracts forming the Poor Fork job and that defendant (who at that time did not own the Metcalf timber) also agreed as a part of the same contract for plaintiff to log the timber on the Metcalf tract, but that he had refused to permit plaintiff to do so, and he sought to recover $2,400 as damages he sustained on account of such refusal. The grand total of the amount sought to be recovered from the defendant was $6,754.85. The answer of defendant denied all of the claims attempted to be asserted against him in the petition, and then counterclaimed for overpayments made to plaintiff, with some other items of indebtedness to defendant, in the aggregate sum of $3,353.65, for which judgment was prayed against plaintiff. Following pleadings made the issues; but in the meantime defendant moved to transfer the cause to the equity docket, since the controversial issues involved many transactions, accounts, payments and other items of dispute involved in the respective claims asserted by both parties. The court sustained that motion and transferred the case to the equity docket. After evidence taken by depositions, the cause was submitted to the court and it dismissed the petition of plaintiff, and disallowed defendant's counterclaim, from which plaintiff prosecutes this appeal.

The first question, of which complaint is made by counsel for plaintiff and appellant, is the alleged error of the court in transferring the cause to the equity docket; but we fail to find any motion for any issue of fact to

be submitted to the jury after the transfer was made. Subsection 4 of section 10 of the Civil Code of Practice authorizes the court in the proper exercise of its discretion to transfer an ordinary action to the equity docket of the court in instances therein enumerated ''whenever the court, before which the action is pending, shall be of the opinion that such transfer is necessary because of the peculiar questions involved, or because the case involves accounts so complicated, or such great detail of facts, as to render it impracticable for a jury to intelligently try the case.''

The same question of practice was before this court in the case of Coy v. King, 199 Ky. 65, 250 S. W. 503, wherein the facts, with reference to the complications of the issue submitted for trial, were not so great as is true in this case. The court transferred the action—which was brought in ordinary—to the equity docket, and in our opinion we overruled the objection that the court erred in doing so. In the notes to the section of the Code referred to many other cases to the same effect are listed, among which is that of Brown and Millard v. Crescent Stave Company, 207 Ky. 470, 269 S. W. 739, involving many contested accounts and other items between a stave manufacturer and a distilling company which contracted for them. This court sustained the action of the trial court in making the transfer. In neither of the cited cases did the facts authorizing the transfer measure up to those appearing in this case for the exercise of the same authority. We, therefore, conclude that this alleged error is without merit—leaving for determination only questions of fact.

With the various depositions taken, bundles of exhibits were filed, composed of checks, accounts paid by defendant for plaintiff at his request and consent while logging the timber contracted for, various lists of the quantity of logs delivered periodically and covering the space of time devoted by plaintiff in performing all of his logging contracts, and also various other items and matters, which altogether, formed a bundle too large to be copied in the record, and which was brought to this court, by agreement of parties, in a separate package from the one containing the record of the trial. It will, therefore, be impossible for us to take up in detail each contested item in an effort to justify or refute the general conclusion of the court as embodied in its judgment.

We have carefully scrutinized the record and examined the exhibits—brought here, as we have stated, in a separate package of considerable dimension and weight—and we have been unable to reach any conclusion different from that arrived at by the trial court, except in one instance, which is an item of $2,100 that plaintiff testified was evidenced by a duebill given him by defendant in payment of one periodical or temporary settlement made between them. Plaintiff borrowed from a bank in Harlan $300, and executed his note therefor, pledging as security the duebill referred to and which was also proven by the cashier at the bank. Plaintiff later paid his note to the bank, but the proof fails to show what became of the duebill which was attached to it as collateral security. Defendant's counsel, so far as we have been able to ascertain, did not interrogate his client with reference to that duebill, and but for the fact that defendant's proof in support of his counterclaim to the extent at least of consuming it, plaintiff would be entitled to recover its amount. The judgment of the court did not attempt to analyze the proof adduced by either party, and it quite likely concluded that at least enough of the counterclaim was established to extinguish defendant's duebill—there being nothing in the judgment indicating a contrary conclusion by the court. For that reason we conclude that the judgment should not be reversed because plaintiff was not granted a judgment for the amount of the duebill. The case being in equity, this court will consider and determine the rights of the parties under the proof adduced, regardless of the findings of facts by the chancellor trying the case when we determine the facts are different from those upon which the judgment was rendered, and which does not militate from the ultimate conclusion of the trial court. In such case the judgment will not be disturbed.

As we have stated, plaintiff sought damages for failure of defendant to permit him to log the timber on the Metcalf tract of land, located as we have hereinbefore described. The contract, as we have also stated, so claimed by defendant to have been violated in the respects indicated, not only rested entirely in parol, but was made at the same time of the making of the Poor Fork contract and, as plaintiff asserts, was a part of it. If his contention be true, then the proof shows, without contradiction, that with the reasonable facilities and equipment possessed by plaintiff for the performance of his

contract, taking into consideration the terrain of the mountainous territory, he could not have logged all of the timber that he contracted to do from the combined acreage of the three tracts of land upon which the timber stood—composing the entire Poor Fork job—within one year from the time of the making of that contract. Defendant testified, as an experienced timberman, that it would have taken at least three years to complete the delivery of the timber at his mill, and plaintiff admits that it would have required more than one year's time to have done so.

Our statute, known as the "Statute of Frauds" is contained in section 371.010 of the 1942 edition of KRS (section 470 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes). It prescribes, inter alia, that "No action shall be brought to charge any person * * * Upon any agreement which is not to be performed within one year from the making thereof, unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing, and signed by the party to be charged therewith." The part of the quoted statute following the asterisks is subsection 7 of the section of the statutes referred to. In notes contained in the Baldwin edition of the statutes cases construing subsection 7 thereof are cited, beginning on page 257 of that edition of the statutes. One heading of the cases so listed is "Contracts that can not be performed within a year," and among the cases is that of Cumberland & Manchester R. Company v. Posey, 196 Ky. 379, 244 S. W. 770, 771. It was said in our opinion that, owing to the amount and character of work to be performed, "the parties could not possibly have had in mind at the time [that] the same could be or would be completed within one year."

The same conclusion was reached in the cases of East Tennessee Telephone Company v. Paris Electric Company, 156 Ky. 762, 763, 162 S. W. 530, Ann. Cas. 1915C, 543; Kentucky Utilities Co. v. Hurst, 207 Ky. 448, 269 S. W. 525, and other preceding ones listed in the notes above referred to. Under the doctrine laid down and approved by this court in those cases, the proof heard in this case brings it squarely within the doctrine announced in them. It will, therefore, appear that the alleged contract for the logging of the timber from the Metcalf tract—even if made as contended by plaintiff—

would not be enforceable under our statute, supra, and such defense may be available, although not specifically pleaded where the making of the contract was denied by the one sought to be charged therewith. See the Cumberland & Manchester R. Company case, supra.

However, in the absence of the availability of the section of the Statute of Frauds referred to—and conceding for the purposes of the case that the facts did not render the statute available to defendant for the reason advanced in the cases referred to—the issue would then be determinable from the proof in the case relative to the Metcalf tract being included in plaintiff's contract for the alleged violation of which he seeks to recover damages. Defendant testified positively—and the record substantiated him in that regard—that at the time of entering into the contract relating to the Poor Fork job he did not own the timber on the Metcalf tract, and if he had made the contract insisted on by plaintiff with reference to that tract he would have been contracting with reference to property he did not own at the time, which itself is a circumstance indicating that no such contract was made. But, in addition thereto, defendant positively denied having entered into any such contract with reference to the Metcalf tract.

Plaintiff contended otherwise, and he attempted to substantiate his testimony by that of his son. However, both of them testified—not only on that issue but others —in a more or less confusing and non-convincing fashion. One peculiarity of the son's testimony is that he "happened" to drive up to the place where plaintiff and defendant were negotiating the contract. On direct examination he testified: "Well, they made the contract, they said—Dad took the contract for $12.50 a thousand to put it to the mill." He was then asked: "What timber was it?" To which he answered: "Shell Branch (which is shown to be the Metcalf tract) I just happened to be there." On cross-examination he was asked:

"Q. Is that all of the contract you heard up there? A. Yes.

"Q. You just heard a part of it. A. Well, I wasn't much interested. I was just a by-stander."

That testimony, as we have stated, is most extremely non-convincing on the concrete issue involved. Strangely enough the witness remembered no other part of the

contract, except that relating to the contested issue of broadening its scope so as to embrace that particular area of timber on the Metcalf tract. At any rate, the court—as does a jury in an ordinary case—had the right to believe the testimony adduced by one litigant in preference to that furnished by his antagonist, even though a greater number of witnesses testified in support of the rejected contention. Moreover, it will be remembered that plaintiff did not file this action until the expiration of a period of about two years after all of his services to defendant ceased, and that long period of inaction on his part is also a circumstance that might be considered in determining the justness of his various claims.

Our final conclusion is that we find nothing in the record rising to the dignity of a reversible error, and for which reason the judgment is affirmed.