RENDERED:  FEBRUARY 21, 2025; 10:00 A.M.
TO BE PUBLISHED
ORDERED PUBLISHED: FEBRUARY 26, 2025

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0731-ME

KEVIN WAYNE HOGLE                                                    APPELLANT

v.                    APPEAL FROM KENTON CIRCUIT COURT
                      HONORABLE THOMAS A. RAUF, JUDGE
                      ACTION NO. 24-D-00205-001

STEPHANIE NICOLE HOGLE                                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, A. JONES, AND McNEILL, JUDGES.

McNEILL, JUDGE:  Kevin Hogle appeals from a domestic violence order (DVO)

entered on behalf of his spouse, Stephanie Nicole Hogle (Nicole), by the Kenton

Family Court.  After careful review, we affirm.

**Factual and Procedural Background**

The parties were married in 2014 and have one minor child in

common, R.L.H.  In early 2023, the marriage began to sour and the acrimony

culminated on December 24, 2023. Kevin was out drinking at a bar and returned to the marital home at approximately 1:00 a.m., intoxicated. Nicole was in her bedroom; R.L.H. and Nicole's minor son from a previous marriage, J.S.,[1] were still awake. Kevin brought food from Taco Bell and the children began to argue over who would eat the food. Nicole testified she heard voices being raised from Kevin and the children, which turned into yelling. She went into the living room and told J.S. to stop talking to Kevin, but the yelling continued. Kevin then grabbed and flipped the sofa over while J.S. was lying on it. In doing so, the sofa hit Nicole in the face and knocked her over. Nicole testified the sofa landed over J.S. "like a teepee" and he was not injured, but that she did sustain minor injuries. Once Nicole stood back up, she pushed Kevin, who stated that he did not mean to hurt her. Nicole called the police, but Kevin left before they arrived. He was arrested later that night and charged with assault, 4th-degree domestic violence minor injury. The next day, Kevin told Nicole that he wanted her and the children out of the home.

Nicole filed a petition for dissolution in January 2024. In early April 2024, Nicole spoke with a neighbor, who informed her that Kevin had hired a private investigator (PI) to follow Nicole when she took a trip to Colorado in

---

[1] Pseudonym initials are used for Nicole's child from a prior relationship. Only his first name appears in the record before us.

February 2024. Nicole also learned that Kevin had been sending text messages to R.L.H. inquiring regarding her whereabouts and had asked the child to use the "Find My" friends feature on his cellular telephone to screenshot Nicole's location. Nicole filed a petition for a protective order on May 6, 2024, in which she cited the sofa incident, the surveillance when she went to Colorado, and the text messages with R.L.H.[2] An emergency protective order was issued and the evidentiary hearing for the DVO was scheduled for May 15, 2024.

Although the dissolution action was assigned to Division 5 of the Kenton Family Court, the DVO was assigned to Division 6. At the outset of the DVO hearing, Kevin asked to have the matter transferred to the same division as the dissolution. Nicole objected because she wanted to go through with the DVO hearing that day and argued the parties had not yet been before Division 5 for any reason. Judge Thomas Rauf, Division 6, declined to transfer the DVO and stated that he could have the dissolution transferred to Division 6 as well.[3] Kevin also argued that, in anticipation of having a continuance due to the transfer, he had not asked his witnesses to attend. The family court stated from the bench that Kevin had plenty of time to prepare his case, as he was served on May 8, 2024, and that

---

[2] Nicole did not seek a protective order on behalf of R.L.H. or J.S.

[3] In his brief to this Court, Kevin states that, after the hearing, Division 5 refused to transfer the dissolution to Division 6. While Nicole does not necessarily dispute this, there is nothing in the record that indicates Division 5 refused to transfer the dissolution.

he should have arrived under the assumption that the matter would be going forward as scheduled. The court did move the case to the end of the docket, which gave the parties several additional hours to prepare.

Both parties testified at the hearing. Nicole affirmed the facts in the petition and gave background information on how the marriage was falling apart, culminating on December 24, 2023. She also testified that Kevin had a problem with alcohol in the past, but was sober from 2017-2020. However, once Kevin's friend moved into their neighborhood, Kevin began drinking again and was intoxicated on the night of the sofa incident. Kevin testified that the sofa incident was an accident and that he wanted only to "shellshock" J.S., not hurt Nicole. He also testified that he sent text messages to R.L.H. questioning Nicole's whereabouts because he did not want R.LH. home alone for extended periods of time. He testified he hired the PI to follow Nicole to Colorado because he was concerned she was dissipating marital money and suspicious that she went to Colorado with another man with whom she was romantically involved. Kevin's mother also testified that, on the day after the sofa incident, Nicole told her it was an accident.

The family court entered a DVO on the standard form, AOC-275.3, and also entered separate, additional findings of fact and conclusions of law. This appeal followed. Further facts will be developed as necessary.

-4-

## Standard of Review

A family court may enter a DVO if it finds "by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" KRS[4] 403.740(1). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Dunn v. Thacker*, 546 S.W.3d 576, 580 (Ky. App. 2018) (citing *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007)). "[T]he standard of review for factual determinations is whether the family court's finding of domestic violence was clearly erroneous." *Dunn*, 546 S.W.3d at 578 (citations omitted). A family court's findings are not clearly erroneous if they are "supported by substantial evidence." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). Substantial evidence is that "which would permit a fact-finder to reasonably find as it did." *Randall v. Stewart*, 223 S.W.3d 121, 123 (Ky. App. 2007) (citation omitted).

Kevin also argues that the family court erred by not transferring the matter to Division 5 of the Kenton Circuit Court. Generally, a court's ruling on a motion for a change of venue is reviewed for an abuse of discretion. *Arkk Properties, LLC v. Cameron*, 681 S.W.3d 133, 141 (Ky. 2023). "The test for abuse

---

[4] Kentucky Revised Statutes.

of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

**Analysis**

Kevin makes two arguments on appeal. He claims the family court erred because there was insufficient evidence to support entry of the DVO and that the family court erred by not transferring the matter to Division 5 of the Kenton Circuit Court. We disagree.

The family court found that Kevin's flipping of the sofa was "certainly an act of domestic violence" in which Nicole sustained physical injuries, and the culmination of a pattern of behavior by Kevin. The family court also found that the text messages from Kevin to R.L.H. from January-April 2024, to ascertain Nicole's whereabouts, in addition to Kevin's use of a PI to surveil Nicole in Colorado, were a means of coercive control that were proof that domestic violence could occur again.

Kevin's arguments turn, in large part, on his justifications for his actions, which he claims have nothing to do with domestic violence. Clearly, the family court did not believe his explanations.

> It has long been held that the trier of fact has the right to believe the evidence presented by one litigant in preference to another. *King v. McMillan*, 293 Ky. 399, 169 S.W.2d 10 (1943). The trier of fact may believe any

witness in whole or in part. *Webb Transfer Lines, Inc. v. Taylor*, Ky., 439 S.W.2d 88, 95 (1968).

*Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996).

In other words, the family court was free to find Kevin's testimony not credible, which it obviously did. Accordingly, we discern no error.

Kevin also argues that "coercive control," as found by the family court in relation to: (1) the text messages to R.L.H. regarding Nicole's whereabouts; and (2) use of the PI, is not an element of domestic violence per statute, nor is it an indicator that domestic violence may occur again. KRS 403.720 defines domestic violence, in relevant part, as follows:

> (2) "Domestic violence and abuse" means:
>
> > (a) Physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]

While we agree that the words "coercive control" do not appear in the statute, the United States Supreme Court has recognized that

> "DOMESTIC Violence" is not merely a type of "violence"; it is a term of art encompassing acts that one might not characterize as "violent" in a nondomestic context . . . .
>
> Minor uses of force may not constitute "violence" in the generic sense. . . . But an act of this nature is easy to

-7-

> describe as "domestic violence," when the accumulation
> of such acts over time can subject one intimate partner to
> the other's control.

*United States v. Castleman*, 572 U.S. 157, 165-66, 134 S. Ct. 1405, 1411-12, 188 L. Ed. 2d 426 (2014) (emphasis in original).

Moreover, the Kentucky Supreme Court has clarified that a court in the Commonwealth may use

> its judicial knowledge of common risk factors to evaluate
> whether domestic abuse may occur in the future, as
> required by the statutory standard. **The predictive
> nature of the standard requires the family court to
> consider the totality of the circumstances** and weigh
> the risk of future violence against issuing a protective
> order.

*Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015) (emphasis added).

In the case at bar, the family court considered the volatile nature of the parties' relationship leading up to the sofa-flipping incident, the incident itself, and the subsequent surveilling of Nicole by Kevin through R.L.H. and the PI. The text messages and use of a PI were cumulative acts by Kevin that indicated domestic violence may occur again. Although Kevin argues extensively that the surveillance does not amount to stalking, the family court did not make a finding that the surveillance was stalking. It simply considered all incidents in its consideration of whether domestic violence could occur again in the future. We discern no error.

-8-

Kevin also argues that, because the misdemeanor charges against him were ultimately dismissed, this shows there was no injury to Nicole. To wit, Kevin states that, "[t]he Commonwealth's agreement to dismiss shows their belief they could not prevail at trial because a lack of intent and lack of injury is [sic] fatal to the criminal charge." Appellant's brief at 18-19. We are unpersuaded. Uniform Local Criminal Rule of Kenton County (ULCr) I(A) states, in relevant part, that "**[a]ll persons** charged in District Court with the commission of a misdemeanor or violation shall be eligible for participation in the Diversion Program, as an alternative to criminal prosecution, subject to the following conditions and exceptions . . . ." (Emphasis added.) The fact that Kevin was granted the privilege of diversion through the ULCr cannot be construed to indicate that the Commonwealth lacked evidence, nor does it have any bearing on the family court's findings that domestic violence occurred and may occur again.

We now turn to Kevin's argument that the family court should have transferred the DVO to Division 5, where the petition for dissolution was pending.

> [T]he General Assembly requires "[a]ny family member or member of an unmarried couple who files a petition for an emergency protective order in District or Circuit Court shall make known to the court any custody or divorce actions, involving both the petitioner and the respondent, that are pending in any Circuit Court in the Commonwealth." KRS 403.725. If the court where the DVO was filed does not *sua sponte* transfer the matter, the parties can, and should, request the court to do so. This is in accord with the general purpose of having

family courts. *Wallace v. Wallace,* 224 S.W.3d 587, 591 (Ky. App. 2007). "The 'one judge, one family' approach is a remedy to the fractionalization of family jurisdiction." *Id.*

*Patterson v. Winchester*, 482 S.W.3d 792, 795-96 (Ky. App. 2016).

However, most of the published caselaw in Kentucky deals with whether a DVO should be transferred *to the same county* as a pending custody or dissolution action, not whether a DVO should be transferred to a different division *within the same county* as a pending custody or dissolution action. *See, e.g.*, *Patterson*, *supra*; *Holt v. Holt*, 458 S.W.3d 806 (Ky. App. 2015); *Cottrell v. Cottrell*, 114 S.W.3d 257 (Ky. App. 2002). To that end, we look to the Kenton County Family Local Rules of Practice (KCFLRP). KCFLRP 104.03, entitled Assignment of Cases with Prior Contact provides, in relevant part, that

> [a]t the time of filing of a complaint, petition or other initiating pleading, the Clerk of the Court shall review the Court's records to determine whether the family involved has had any prior contact with the Kenton Family Court. If no contact is revealed, the case shall be assigned to a numerical division of the Kenton Family Court by random assignment, and scheduled for further proceedings in accordance with these rules. **If prior contact is revealed, the case shall be assigned to the numerical division of the Kenton Family Court which issued the most recent order concerning the family**. In the event there is only a Domestic Violence (D) case in the system, it shall never control for assignment[.]

(Emphasis added.)

Nicole did indicate on her petition for an order of protection that the parties had a divorce action pending in the Kenton Family Court. Although the dissolution had been assigned to Division 5, the case was still in its very early stages and the parties had not yet been before the court, nor had Division 5 entered any orders regarding the parties. It is unclear from the record before us the reason the clerk assigned the DVO to Division 6 and not Division 5. Regardless, Appendix B (III) of the KCFLRP also states, in relevant part that

> E. Cases **may** be reassigned or transferred between courts if it is determined that there are other actions pending or circumstances indicate that review by the other court is proper. KRS 403.725, KRS 456.030. If reassignment or transfer occurs, the issuing judge shall re-issue a summons until the matter may be heard by the receiving judge.

(Emphasis added.)

In other words, according to the KCFLRP, transfer of the DVO from Division 6 to Division 5 was not mandatory, given the dissolution was still in its earliest stages (*i.e.*, it had not proceeded past Kevin's filing an answer to the petition). This is in accordance with Kentucky caselaw because the DVO was the first order entered in the Kenton Family Court between the parties, which means no fractionalization of jurisdiction occurred. *Patterson*, 482 S.W.3d at 796.

-11-

## Conclusion

For the foregoing reasons, the DVO and accompanying Findings of Fact, Conclusions of Law, and Order of the Kenton Family Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Kevin J. Moser
Florence, Kentucky

BRIEF FOR APPELLEE:

Justin Whittaker
Cincinnati, Ohio