RENDERED: SEPTEMBER 19, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0286-MR

DMS PROPERTIES, LLC AND DAVE
STUMBO, AS REGISTERED AGENT
OF DMS PROPERTIES, LLC                                    APPELLANTS


                    APPEAL FROM BUTLER CIRCUIT COURT
v.          HONORABLE TIMOTHY R. COLEMAN, JUDGE
                    ACTION NO. 16-CI-00138


ESTATE OF EDWIN DOLPHUS
PHELPS; LEA DYE, AS EXECUTRIX
OF THE ESTATE OF EDWIN
DOLPHUS PHELPS; LINDA PHELPS,
AS EXECUTRIX OF THE ESTATE OF
EDWIN DOLPHUS PHELPS; JERRY
WAYNE PHELPS; AND UNKNOWN
HEIRS OF THE ESTATE OF WILEY
DOLPHUS PHELPS, SR.                                        APPELLEES


                              OPINION
                             AFFIRMING

                         ** ** ** ** **

BEFORE:  CETRULO, LAMBERT, AND TAYLOR, JUDGES.

LAMBERT, JUDGE: DMS Properties, LLC, and Dave Stumbo, as the registered agent of DMS Properties, LLC (collectively, DMS) have appealed from the judgment of the Butler Circuit Court, following a bench trial, denying claims for an easement by prescription or necessity over neighboring property in order to access DMS's property. We affirm.

The underlying matter began with the filing of a verified complaint pursuant to Kentucky Revised Statutes (KRS) 411.120 by DMS[1] in November 2016 against the Estate of Edwin Dolphus Phelps; Lea Dye and Linda Phelps, as executrixes; Jerry Wayne Phelps; and unknown heirs of Wiley Dolphus Phelps, Sr. (collectively, the defendants or appellees). In the complaint, DMS alleged claims to quiet title and for trespass to property it had acquired in 2008.[2] In 2017 and 2018, DMS moved the court for, and was granted, leave to file amended complaints to include additional causes of action to establish an implied easement of necessity and for a prescriptive easement. DMS alleged that its property had been historically accessed via a roadway off Highway 70/Brownsville Road in Roundhill, Kentucky (the access road). The access road ran through the defendants' property from Highway 70 for 70 to 80 yards before reaching DMS's

---

[1] Dave Stumbo owns DMS, which is a real estate holding company organized to own farmland in Butler County. He formed the LLC with his brothers, Matt and Scott, to purchase a different piece of real property and then bought out their interests.

[2] DMS dropped these claims at the beginning of the trial, and we shall not address the merits of them any further.

property. A photograph of the access road was introduced at the trial. It shows a guardrail running between Highway 70 and the defendants' property. The guardrail ends with a short curve into the defendants' property. To the right of the curved portion of the guardrail is a short, paved portion of roadway leading into the defendants' property that ends with a closed fence.

After several years of delay, the court held a bench trial on November 22, 2021. Dave Stumbo, the owner of DMS, testified first. DMS purchased the property in 2008, which Dave used for hunting and farming. When he went to look at the property before purchasing it, Dave accessed it through the access road off Highway 70, which he said was the road to his property. At that time, there were no signs or anything to keep him from using the road. He and others would access the property through that road, except one year when he made an agreement with another neighbor (Norman Huff) to go through his adjoining property via the Bluett-Coy Road. He thought it was 70 to 80 yards to get to his property from Highway 70 through the defendants' property. He said there was a guardrail and asphalt in place when he purchased the property in 2008. From 2008 to 2016, no one complained about his use of the road.

Dave also testified about whether other access points to his property existed. DMS's property backed onto Little Reedy Road, but this area included wetlands protected by United States Fish & Wildlife. There was also a creek in

this area, which ran parallel to the Little Reedy Road. Dave stated that he had asked but was not permitted to build an access road in that area as it would have had to go through the protected wetlands. Dave also testified that his brother, Matt, owned adjoining property further back from Highway 70, which DMS had sold to Matt in 2020 during the pendency of this action. Regarding Matt's access to a road, there was discussion of access via Renfrow Cemetery Road, but Dave believed he had to cross a portion of another neighbor's property to reach it.

In 2016, Dave's agreement to access the property through the neighboring Huff property ended when Huff got upset that Dave put a load of gravel on a culvert. In April of that year, Dave tried to improve the access road over the defendants' property so that he could get his semi-trailer onto the property.[3] He used a bulldozer to spread out gravel on the road bed. At that point, the defendants threatened him and put boulders up in front of the gate at the beginning of the access road so that he could not get access to the property. Dave said he had not had any problems in the past with Edwin Phelps; after Edwin passed away in 2015, Dave stated problems with Tom Ballenger, a caretaker of the property, began.

Lea Dye testified next. Her father was Edwin Phelps, and after he passed away, she inherited a life estate in his half-interest in the property. Jerry

---

[3] Dave would use a semi or a grain cart and tractor to take the crops out.

Phelps, her father's first cousin, held the other half-interest. She did not have personal knowledge about the access road, and she had not found any documents in her father's records referencing it. She did not know that Dave was using the access road. She also confirmed that Ballenger had leased part of the defendants' property in the past.

Jerry Phelps testified next. He lived in Warren County and had been on and off the subject property before 2016. Jerry did not know who put the asphalt down on the access road, but he thought it was done for Altafiber employees to park while they set up the fiberoptic system. Other people had used the access road to remove timber; the last time this took place was in 2004. There had been no trespassing signs up for as long as he could remember, including before DMS purchased the property. He said there was also a steel cable wrapped around two trees that spread across the access road between Highway 70 and DMS's property. The cable had been up for at least 15 years.

Jerry stated that Ballenger did not own any of the defendants' property; he acted as the caretaker in exchange for hunting rights. Jerry stated that he did not have much to do with the property prior to Edwin's death. Edwin had permitted timber to be removed from the various properties, including the Huff property, through the access road. Jerry knew there had been an attempt to build a road to access the DMS property via the Renfrow Cemetery Road off Little Reedy

Road after DMS purchased it. There was a road built across to the property that was washed out during a storm; it lasted maybe a year.

Josh Colburn testified next. Colburn lived two miles away from the access road, and he had lived in Butler County his whole life. The entrance to the access road had been there his whole life (he was at that time 38 years old). When he was growing up, Colburn rode horses and 4-wheelers on what became DMS's property, and he reached the property through the access road in question. Colburn did not ask for permission; it was understood that this had always been the road to the property. There had never been a cable or anything obstructing the access road when he used it. The gate had been installed in the last five to 10 years ago, when Ballenger began taking care of the defendants' property. Around the same time, Colburn began noticing big rocks placed around the gate. No one ever gave him any problems about using the access road.

David Whittinghill testified next. He had lived in Butler County for 66 years, and he had been on the future DMS property when he did bushhogging one time for a prior owner. He believed that had been ten to twelve years ago. His brother had also done bushhogging on the now DMS property in the 1990s, and both brothers had accessed the property via the access road at issue without objection. There was no gate or any type of cable or obstruction blocking the

access road. Whittinghill did not ask anyone permission to use the access road; he thought it was an easement into the property.

For their only witness, the defendants called Tom Ballenger. He owned property that bordered the western side of the defendants' property, and he had lived there since 2001. He was familiar with the portion of the defendants' property where the access road was located, and he described the guardrail improvement in 2003 as well as the cross ties and gate across the beginning of the access road. He put up the cable in 2002 and the gate in 2003 as well as private property signs because people were dumping trash everywhere, and he had encountered people driving through without permission. To his knowledge, no one went through the property after he put up the gate and posts, which had dramatically cut down on trash dumping. Tom said he had never seen anyone hunting or riding ATVs or horses. He also testified that there was a cable across the access road when he first took over the property. Ballenger put the rocks near the gate in April 2016, the day after Dave used the bulldozer to push through to DMS's property. The bulldozer work had caused a lot of washout in that area. He also discussed loggers using the access road portion of the defendants' property in 2004 to remove logs, which Edwin had agreed to.

In its post-trial memorandum, DMS requested that the court recognize a right-of-way easement through the defendants' property, either by prescription or

necessity. The bulk of the argument addressed whether it could establish an easement by prescription, with DMS specifically arguing that it could meet the 15-year statutory period through tacking the use of the access road during previous ownership. In the conclusion, DMS argued that it was also entitled to an easement by necessity as its use was reasonable and not unduly burdensome on the defendants' rights.

In their post-trial brief, the defendants argued that DMS had abandoned their claim for an easement by necessity as it did not put on any proof at the trial to establish this claim. And its claim for a prescriptive easement had to fail as a matter of law because it could not establish the statutory 15-year, continuous use period as it purchased the property in 2008 and tacking was not established through the witnesses called for this purpose.

On November 15, 2023, the court entered its findings of fact, conclusions of law, and judgment. First, the trial court held that DMS could not establish a prescriptive easement because it could not establish continuous use for the 15-year statutory period. As to the use prior to its purchase by DMS, the court specifically held that "neither witness possessed sufficient knowledge of use by DMS's predecessors-in-title of the [access road] to support a prescriptive easement." The court also rejected DMS's claim to an easement by necessity, finding that it had not presented any proof at trial of unity of title. Therefore, the

court entered a judgment in favor of the defendants.[4]  After the court denied

DMS's motion to alter, amend, or vacate the judgment pursuant to CR 59.05, DMS

filed the present appeal.

On appeal, DMS continues to argue that the court erred in concluding

that it was not entitled to an easement either by prescription or by necessity.  The

defendants (now appellees) dispute DMS's arguments.

Because this matter was tried before the court without a jury, our

standard of review is as follows:  An appellate court may set aside a lower court's

findings made pursuant to CR 52.01 "only if those findings are clearly erroneous."

*Moore v. Asente*, 110 S.W.3d 336, 353-54 (Ky. 2003).  To determine whether

findings of fact are clearly erroneous, we must decide whether the findings are

supported by substantial evidence:

> Substantial evidence is evidence that a reasonable mind
> would accept as adequate to support a conclusion and
> evidence that, when taken alone or in the light of all the
> evidence, has sufficient probative value to induce
> conviction in the minds of reasonable men.  Regardless
> of conflicting evidence, the weight of the evidence, or the
> fact that the reviewing court would have reached a
> contrary finding, due regard shall be given to the
> opportunity of the trial court to judge the credibility of
> the witnesses because judging the credibility of witnesses
> and weighing evidence are tasks within the exclusive

---

[4] Neither DMS nor its counsel received a copy of the judgment until December 21, 2023, after the expiration of time to appeal it.  Based upon this, DMS filed a motion to set aside the judgment pursuant to Kentucky Rules of Civil Procedure (CR) 60.02, which the trial court granted.  It re-entered its findings of fact, conclusions of law, and judgment the same day.

province of the trial court.  Thus, mere doubt as to the correctness of a finding will not justify its reversal, and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Id.* at 354 (internal quotation marks, brackets, ellipsis, and footnotes omitted).

"The trial court's conclusions of law, however, are subject to independent de novo appellate determination."  *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005).

An easement is defined in 28A C.J.S. *Easements* § 1 (2025) as follows:

> An easement is a liberty, privilege, or advantage without profit, which the owner of one parcel of land may have in the lands of another; or, as conversely stated, it is a service which one estate owes to another, or a right or privilege in one man's estate for the advantage or convenience of the owner of another estate.

And in *Carroll v. Meredith*, 59 S.W.3d 484, 489-90 (Ky. App. 2001), this Court set forth the methods by which an easement may be created:

> Generally, an easement may be created by express written grant, implication, prescription or estoppel. Easement by implication includes two legal theories:  (1) quasi-easement and (2) easement or way by necessity. . . .  Easements are not favored and the party claiming the right to an easement bears the burden of establishing all the requirements for recognizing the easement.

(Footnotes omitted.)  In the present case, DMS has argued that it is entitled to an easement by either prescription or necessity.  We find no merit in either argument and therefore affirm.

-10-

DMS's primary argument is that it is entitled to an easement by prescription.

> The law of prescriptive easements is derived from the principles underlying adverse possession of property interests generally. As a general matter, in order to obtain a right to a prescriptive easement, a claimant's adverse use must be actual, open, notorious, forcible, exclusive, and hostile, and must continue in full force for at least fifteen years. A prescriptive easement is a property right in one landowner (dominant tenement) representing a privilege to use the land of another (servient tenement) and is based on a presumed grant that arises from the adverse, uninterrupted, and continued use for a 15-year statutory period. The adverse possession of a grantee may be tacked on to that of his grantor to complete the statutory period.

*Cole v. Gilvin*, 59 S.W.3d 468, 475 (Ky. App. 2001) (internal quotation marks, ellipsis, brackets, and footnotes omitted). *See also Columbia Gas Transmission Corp. v. Consol of Kentucky, Inc.*, 15 S.W.3d 727, 730 (Ky. 2000). The trial court concluded that DMS's use of the access road did not meet the 15-year statutory period, nor was it continuous, which are the factors on which we shall focus as we review this argument.

It is undisputed that DMS purchased its property in 2008 and that the entrance through the access road on the defendants' property was blocked by boulders in 2016. In order to reach the necessary 15-year statutory requirement, DMS relied upon tacking and introduced the testimony of Colburn and Whittinghill regarding their use of the land prior to DMS's ownership in 2008. As

was its prerogative, the trial court did not find that these testimonies supported

DMS's tacking claim.

> It has long been held that the trier of fact has the right to believe the evidence presented by one litigant in preference to another. *King v. McMillan*, 293 Ky. 399, 169 S.W.2d 10 (1943). The trier of fact may believe any witness in whole or in part. *Webb Transfer Lines, Inc. v. Taylor*, Ky., 439 S.W.2d 88, 95 (1968). The trier of fact may take into consideration all the circumstances of the case, including the credibility of the witness. *Hayes v. Hayes*, Ky., 357 S.W.2d 863, 866 (1962).

*Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996).

The court noted the two witnesses' anecdotal testimony about their respective, personal uses of the access road (for recreational use or for bushhogging) but concluded that "neither witness possessed sufficient knowledge of use by DMS's predecessors-in-title of the [access road] to support a prescriptive easement." The court also noted that a photograph introduced into the record showed that a tree onto which a chain had been secured to block access to the access road had grown around the chain, further establishing that the access road had been closed some time ago in the past. We hold that there is substantial evidence in the record to support these findings – even without reliance upon Ballenger's testimony – and find no error in the trial court's conclusion that DMS failed to establish the statutory 15-year period.

In addition, the trial court relied upon Dave's testimony that he did not use the access road for one year when he had an agreement with another neighboring property owner. This resulted in a break in Dave's continuous usage of the access road, which also defeats the claim for a prescriptive easement.

For its second argument, DMS contends that it is entitled to an easement by necessity.

> An easement by necessity is based primarily on the policy favoring beneficial use of property. . . . The three prerequisites to creation of an easement or way of necessity are (1) unity of ownership of the dominant and servient estates; (2) severance of the unity of title by a conveyance of one of the tracts; and (3) necessity of the use of the servient estate at the time of the division and ownership to provide access to the dominant estate.

*Gosney*, 163 S.W.3d at 900 (citations omitted).

The trial court concluded that there was no proof presented at trial of unity of title between the two properties, and we agree. We also agree with the appellees that DMS did not present proof at trial of severance of unity of title – if unity had been established – or that Dave's ability to access the property without use of the access road on the appellees' property was anything more than inconvenient. Therefore, we hold that the trial court did not err in concluding that DMS failed to establish its claim for an easement by necessity.

For the foregoing reasons, the judgment of the Butler Circuit Court is affirmed.

-13-

ALL CONCUR.


BRIEFS FOR APPELLANTS:          BRIEF FOR APPELLEES:

David F. Broderick             Matthew J. Baker
Brandon T. Murley              Bowling Green, Kentucky
Bowling Green, Kentucky