RENDERED:  JUNE 20, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0070-MR

DAVID YOUNG                                                       APPELLANT

V.                ON APPEAL FROM LEWIS CIRCUIT COURT
HONORABLE BRIAN CHRISTOPHER MCCLOUD, JUDGE
NO. 20-CR-00012

COMMONWEALTH OF KENTUCKY                          APPELLEE

**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING IN PART, VACATING IN PART AND REMANDING</u>**

David Young was convicted following a jury trial in Lewis Circuit Court of wanton murder, two counts of assault in the first degree, and operating a motor vehicle under the influence (DUI) with aggravating circumstances.  He was sentenced to twenty-five years' imprisonment and now appeals as a matter of right.[1]  Upon review, we affirm the murder and assault convictions, but because a double jeopardy violation occurred, vacate the DUI conviction and remand for entry of a new judgment.

On the morning of May 18, 2020, Young met his ex-wife, Judy, his children, and a few others at Big Cats Pay Lake in Vanceburg, Kentucky, to spend the day fishing.  During the time Young was there, the owner of the pay

---

[1]  KY. CONST. §110(2)(b).

lake, Mike Collins saw him consuming several Bud Light beers. According to Collins, Young and Judy drank all the beer they had brought with them. When he emptied the trash later, he noticed "quite a few cans" in the trash bin.

The weather turned sour after Young and his family had been at the lake for approximately six hours. The family waited out the initial round of rain, but Collins told Young another storm was coming through containing hail and high winds. Collins believed it would be safer for the family to leave the lake due to the impending weather, so they all loaded up their fishing equipment to head home. Judy and three of the children got into her car, their daughter's boyfriend took one of the other children and his friend in his vehicle, and Young got into his own truck by himself. They all planned to go to Judy's house, but the boyfriend had to make a quick trip to Walmart.

Judy left the lake first, but because she disliked driving in anything other than ideal weather conditions, she stopped at the entrance to the pay lake and let Young get in front to lead her. Judy and Young turned left onto AA Highway (KY 9) to go towards her house. It was raining so hard Judy had to use Young's taillights as a guide. After traveling approximately one mile, Young hydroplaned, lost control of his vehicle, veered left of the centerline, and struck a car driven by Jessica Tumlin almost head-on. The collision was so violent that Young's truck was broken into multiple pieces and left a large debris field. A portion of the front chassis including the front axle assembly came to rest in his original lane of travel, the engine block detached and came to rest off the right shoulder of the road in a drainage ditch, and the rest of the

truck travelled almost 220 more feet before coming to a standstill in the grass shoulder after leaving the left side of the roadway.

Lewis County Sheriff's Deputy Mark Sparks was the first officer to arrive at the scene. Upon speaking with Young, he perceived a noticeable odor of alcohol on his person. Young indicated he had consumed six beers throughout the day. Sparks noticed Young had bloodshot glassy eyes, was slurring his speech, and was unsteady on his feet. A portable breath test was administered which indicated the presence of alcohol. Young told Deputy Sparks he had lost control of his vehicle, went left of center, and struck Tumlin's car head-on. The paramedics who transported Young to the hospital described him as "out of it" and having a strong odor of alcohol. Inside the ambulance, Young was reluctant to provide his prior history and personal information. He denied drinking when questioned and although unprompted, stated multiple times that he was not drunk. He had slurred speech, a glazed look, poor motor skills, and had equal but sluggish pupils. A subsequent blood draw taken approximately two hours and fifty minutes after the collision revealed Young's blood alcohol content (BAC) was 0.156.

Tumlin's car remained intact but sustained severe damage in the collision. The two minor passengers, C.C. and B.M.,[2] were injured in the wreck.

---

[2] Pursuant to Kentucky Rules of Appellate Procedure (RAP) 31(B), we refer to the minor victims using initials to protect their privacy.

C.C., age 13, who had been sitting in the rear driver's side seat, suffered a traumatic brain injury, cervical spine fracture, multiple thoracic vertebrae fractures, two broken ribs on her right side, broken left clavicle, lacerated spleen, lacerated liver, pulmonary contusions, and a lower eye lid laceration. Following the collision, C.C. underwent months of speech, occupational, and physical therapy. She had to re-learn basic tasks such as spelling, telling time, sounding out words, forming sentences, telling stories, and reading books.

B.M., also age 13, who was the front seat passenger, sustained a concussion, left wrist sprain, a break to a bone in her knee, and two broken vertebrae. The injuries forced her to end enjoyment of dance and gymnastics activities, interests she had planned to pursue as the foundation of a professional career. At the time of trial, she continued to occasionally wear a knee brace, remained limited in her ability to bend over, and was periodically bedridden due to pain. Though her pain was at times debilitating, B.M. stated she tried to persevere and push herself through any discomfort so as not to allow her suffering to negatively impact her daily life.

Following the collision, Tumlin, age 25, was trapped in the drivers' seat of vehicle. A hydraulic rescue tool, also known as the "Jaws of Life," had to be used to extricate her due to the severity of damage to the drivers' side of the vehicle. She was rushed to the Meadowview Regional Medical Center for emergency treatment of her injuries but, despite the best efforts of medical professionals, she tragically did not survive.

David Lawrence, the Mason County Coroner, was contacted in his official capacity by the Meadowview emergency department regarding Tumlin's death. Upon his arrival at the hospital, Lawrence spoke with medical professionals and law enforcement to assess the situation and ascertain the manner of death. Coupled with these discussions, he examined Tumlin's body and injuries to determine whether an autopsy was necessary. Based on the results of his investigation, Lawrence determined no autopsy was needed based on witness accounts, information from the medical professionals, Tumlin's head and chest injuries, and other contusions and abrasions upon her body. He ultimately determined Tumlin died as a result of multiple blunt force trauma to the head and chest stemming from the automobile collision.

Kentucky State Police Lieutenant Hunter Martin conducted a reconstruction of the accident. His investigation included a survey of the scene, analysis of photographs and measurements taken at the time of the collision, creation of a 3D model utilizing a drone and scans of the vehicles, and collecting information from the event data recorder (EDR) of Tumlin's vehicle.[3] Lt. Martin ultimately determined Tumlin was traveling 52 miles per hour in the righthand portion of her lane at the time of impact. Immediately prior to the collision, Tumlin made a hard evasive maneuver to the right in an apparent attempt to avoid being struck by Young. Lt. Martin discovered no significant mechanical factors existed which would have contributed to the

---

[3] Young's vehicle was not equipped with an EDR due to its age.

wreck. He noted environmental factors included heavy rains and water on the roadway. Also noted in the report were the human factors of Young's BAC and statements from persons on scene regarding Young's impairment. Lt. Martin's reconstruction report concluded Young lost control of his vehicle because of the contributing factors of alcohol in his system and driving too fast for the roadway conditions.

Young was subsequently indicted for wanton murder, two counts of assault in the first degree, and DUI with aggravating circumstances. Following a five-day jury trial, he was convicted on all counts and the jury recommended a sentence of twenty-five years' imprisonment which the trial court imposed. He now appeals as a matter of right. Additional facts will be developed as necessary.

Young raises five allegations of error in seeking reversal. First, he asserts the trial court erred in refusing to grant a directed verdict on the charge of murder. Second, he claims the trial court's exclusion of one of his witnesses deprived him of the right to present a defense. Next, he contends his defense was improperly limited by the trial court's refusal to permit him to discuss the law regarding DUI per se. Fourth, he argues he was entitled to a directed verdict because the Commonwealth produced insufficient evidence of serious physical injury to B.M. to support a conviction of assault in the first degree. Finally, he alleges the jury instructions for murder and DUI violated the double jeopardy clauses of both the Kentucky Constitution and the United States Constitution.

## I. A directed verdict on the murder charge was unwarranted.

Young first argues the trial court erred in denying his motion for a directed verdict on the murder charge based on a failure of proof. Specifically, Young asserts the Commonwealth failed to prove Tumlin's cause of death and that he acted wantonly.

The standard for directed verdicts was firmly set out decades ago in *Commonwealth v. Benham*:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

816 S.W.2d 186, 187 (Ky. 1991). "So long as the Commonwealth produces more than a mere scintilla of evidence to support the charges, a defendant's motion for directed verdict should be denied." *Taylor v. Commonwealth*, 617 S.W.3d 321, 324 (Ky. 2020). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Benham*, 816 S.W.2d at 187.

Young asserts the only testimony produced by the Commonwealth concerning Tumlin's cause of death came from David Lawrence who, although he is the coroner, is not a medical professional. He contends Lawrence offered no evidence of Tumin's injuries or proper medical testimony, thereby leaving

the jury to speculate as to what actually led to Tumlin's untimely passing. Young also believes Lawrence's failure to conduct an autopsy further undermines the Commonwealth's case. In Young's estimation, medical testimony is required in all cases to prove the cause of death and, because no such evidence was presented here, reversal is required. We disagree.

In Kentucky, a decedent's cause of death is typically proven by competent medical testimony, but that rule is subject to the "layman's" exception. "The established rule is that the cause of death may be proved only by medical testimony, except where the facts proved are such that any layman of average intelligence would know from his own knowledge and experience that the injuries described are sufficient to produce death." *White v. Commonwealth*, 360 S.W.2d 198, 201 (Ky. 1962) (citations omitted). Although Young concedes the existence of the foregoing layman's exception and standard, he argues the exception is inapplicable in the case at bar. His assertion is without merit.

The jury was shown photographs of the scene of the collision which depicted the severity of the impact. Other photographs were produced which showed first responders extricating Tumlin from her mangled vehicle, her bloodied face as rescue personnel were attempting to free her, and her seemingly lifeless body as she was being strapped to a backboard before being

whisked away by the waiting ambulance. Tumlin's medical records were also introduced into evidence.[4]

Lawrence described Tumlin's injuries and detailed his investigation, which included viewing her body, speaking with medical personnel and law enforcement, and receiving witness accounts from the scene. Based on the weight of his investigation, Lawrence testified he concluded an autopsy was unnecessary. He determined Tumlin's head injuries, chest injuries, and other contusions and abrasions visible on her body, established she died from blunt force trauma sustained in the motor vehicle collision. His testimony was clear and unequivocal.

We agree with the Commonwealth that the evidence in this case falls within the layman's exception set forth in *White*. Here, a person having average intelligence could reasonably determine from the evidence that the violent car collision was capable of causing, and in fact did cause, Tumlin's death.

Nevertheless, Young argues that without an autopsy, a possibility exists Tumlin died of some other medical condition, trauma, medical malpractice, or delayed medical treatment, any of which was potentially unrelated to the traffic collision. As a result, he asserts the jury was left only to speculate as to Tumlin's actual cause of death. However, Young's argument that the legal

---

[4] Young asserts Tumlin's medical records were not intentionally admitted but rather were inadvertently included with the medical records of B.M. and C.C. However, whether intentional or not, the records were made part of the record and were placed before the jury for its use.

9

force of the Commonwealth's proof was inextricably undermined by Lawrence's failure to require an autopsy, allegedly in contradiction of KRS[5] 72.025 misses wide of the mark. Specifically, Young fails to recognize the legal distinction between the terms "post-mortem examination" and "autopsy." As referenced in the statutory scheme, their usage is not interchangeable.

For context, the coroner of each county is an elected constitutional officer. KY CONST. §99; KRS 72.415(1). KRS 72.410(1) mandates that the coroner "investigate the cause and manner of all deaths that are defined by KRS 72.405 as a coroner's case." KRS 72.405(2) defines coroner's cases as those "in which the coroner has reasonable cause for believing that the death of a human being within his or her county was caused" by any of the nineteen enumerated circumstances listed under KRS 72.025, which particularly includes deaths involving "a motor vehicle accident." In turn, KRS 72.025 mandates that the coroner perform "a post-mortem examination" as part of every required investigation, and KRS 72.410(2) provides that the coroner "may, in his sound discretion . . . order an autopsy."

By definition, an autopsy is a medical procedure involving a specialized scientific "examination of the organs of a dead body to determine the cause of death or to study the pathologic changes present." *Autopsy*, Stedman's Medical Dictionary (28th ed. 2006), page 187. Relevant Kentucky statutes clearly distinguish between post-mortem physical examinations, which are

---

5 Kentucky Revised Statutes.

10

required, and medical autopsies, which are discretionary. KRS 72.405(6) defines a post-mortem examination as

> a physical examination of the body by a medical examiner or by a coroner or deputy coroner who has been certified by the Justice and Public Safety Cabinet and *may include an autopsy performed by a pathologist*; other appropriate scientific tests administered to determine cause of death, including but not limited to genetic tests; or collection of tissue samples collected pursuant to KRS 213.161(3).

(Emphasis added). Conversely, KRS 72.405(3) defines a "coroner ordered autopsy" as "an autopsy ordered by the coroner having jurisdiction and performed by a pathologist pursuant to such authorization in order to ascertain the cause and manner of death in a coroner's case." Clearly, contrary to Young's assertion, a post-mortem examination does not necessarily demand an autopsy.

Here, the investigation into Tumlin's death was conducted by Lawrence, acting in his capacity as the Mason County Coroner. His inquiry included, but was not limited to, a post-mortem examination of Tumlin's corpse. Based on the totality of his investigation, Lawrence reasonably concluded the significant trauma sustained from the motor vehicle accident caused Tumlin's death. There was no error in allowing the jury to weigh the credibility of Lawrence's testimony.

Purely circumstantial evidence may support a conviction if, "based on the whole case, it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt." *Graves v. Commonwealth*, 17 S.W.3d 858, 862 (Ky. 2000). The Commonwealth is not required to "rule out every hypothesis except

11

guilt beyond a reasonable doubt." *Rogers v. Commonwealth*, 315 S.W.3d 303, 311 (Ky. 2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). In other words, "the question on a directed verdict motion is not necessarily what evidence supporting the defendant was solicited, but rather what evidence the Commonwealth produced in support of its burden of proof." *Sutton v. Commonwealth*, 627 S.W.3d 836, 848 (Ky. 2021).

Furthermore, Kentucky law does not require a criminal conviction to be supported with the degree of scientific certainty urged by Young. Under the reasonable doubt standard, "that which a jury may reasonably believe to have been probable is enough to support a finding of guilt." *Timmons v. Commonwealth*, 555 S.W.2d 234, 237-38 (Ky. 1977). Additionally, Young's attacks on the testimony by Lawrence and the remainder of the Commonwealth's proof implicate assessments of the weight and credibility of evidence, which are uniquely within the province of the jury. *Ross v. Commonwealth*, 531 S.W.3d 471, 477 (Ky. 2017).

We likewise disagree with Young's argument that the Commonwealth failed to prove he acted wantonly. In Kentucky,

> [a] person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.

12

KRS 501.020(3). A person is guilty of wanton murder when "[i]ncluding, but not limited to, the operation of a motor vehicle under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person." KRS 507.020(1)(b).

Young admits he consumed alcohol prior to leaving the pay lake while vehemently denying being intoxicated. He asserts his actions did not grossly deviate from those of a reasonable person under similar circumstances and therefore, the Commonwealth failed to show he acted wantonly when driving his truck on the day of the collision. However, Young's argument is based only on favorable evidence adduced at trial and ignores other relevant damning testimony.

While Young and several of his family members testified to their belief Young was not drunk at the time of the incident, several first responders testified to the contrary. Further, an analysis of Young's blood showed his BAC was almost twice the legal limit nearly three hours after the crash, plainly indicating he consumed far more than the two to four Bud Light beers he claimed. A toxicologist who analyzed Young's blood test results estimated his BAC at the time of the crash was between .19 and .21 and testified to the negative impacts such a level would have on his ability to safely operate a motor vehicle. And just because Young did not "think" he was drunk does not mean he was not intoxicated and under the influence of alcohol.

13

"This Court has made clear that intoxication, along with other factors, can suffice to prove the wanton murder element of 'circumstances manifesting an extreme indifference to human life.'" *Bowling v. Commonwealth*, 553 S.W.3d 231, 237 (Ky. 2018) (quoting *Sluss v. Commonwealth*, 381 S.W.3d 215, 219 (Ky. 2012)). Young's intoxication, coupled with the reported rainy and hazardous road conditions, along with his admission of knowing the risks associated with driving while under the influence, were sufficient to prove the wantonness of his conduct in choosing to get behind the wheel.

Here, when viewing the totality of the evidence in the light most favorable to the Commonwealth, we cannot conclude it was clearly unreasonable for the jury to find Tumlin's death resulted from injuries sustained in the motor vehicle collision nor that Young's actions on that day were wanton. An appellate court is not authorized to substitute its view of the evidence for that of the jury. *Timmons*, 555 S.W.2d at 238. We conclude there was sufficient evidence that Young wantonly caused Tumlin's death and it was not "clearly unreasonable for a jury to find guilt." *Benham*, 816 S.W.2d at 187. Thus, we affirm the trial court's decision to deny Young's motion for a directed verdict.

## II. Exclusion of witness was not improper.

Young attempted to call a Lewis County 911 operator to testify on his behalf. His intention was to question the operator about other emergency service calls she had fielded in the hours surrounding the collision relating to heavy rains, high water, or hydroplaning. Presumably he desired to show he was not the only driver impacted by the significant weather event.

14

The Commonwealth objected, asserting road conditions or water issues in other parts of the county were irrelevant to conditions extant at the location of the collision and could cause undue confusion with jurors. The trial court agreed with the Commonwealth and ruled the 911 operator would not be allowed to testify. Although not completely clear from the record, it appears the trial court's decision was based on its belief the proffered testimony would not be relevant. Young argues the trial court's ruling deprived him of the right to present a complete defense.

Rulings on the admissibility of evidence are reviewed for an abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575 (Ky. 2000). An abuse of discretion occurs when a "trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 581 (citing *Commonwealth v. English,* 993 S.W.2d 941 (Ky. 1999)).

The right to present a defense is "a fundamental element of due process." *Washington v. Texas,* 388 U.S. 14, 19 (1967). Such a right "is, in essence, the right to a fair opportunity to defend against the State's accusations." *Beaty v. Commonwealth,* 125 S.W.3d 196, 206 (Ky. 2003), *abrogated on other grounds by Gray v. Commonwealth,* 480 S.W.3d 253 (Ky. 2016) (citation omitted). An accused's right to present a defense

> is firmly ingrained in Kentucky jurisprudence, . . . and has been recognized repeatedly by the United States Supreme Court. . . . An exclusion of evidence will almost invariably be declared unconstitutional when it significantly undermine[s] fundamental elements of the defendant's defense.

15

*Id.* at 206-07 (internal quotation marks and citations omitted).  However, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.  Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"  *Welsh v. Commonwealth*, 641 S.W.3d 132, 140 (Ky. 2022) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)).

KRE[6] 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  "Relevant evidence in a criminal case is any evidence which tends to prove or disprove an element of the offense."  *Harris v. Commonwealth*, 134 S.W.3d 603, 607 (Ky. 2004).

Young asserts the 911 operator's testimony was highly probative and relevant to rebut the Commonwealth's assertions he was the only driver who lost control of his vehicle that day.  We disagree.

It was essentially uncontroverted that the weather on the day of Young's wreck was stormy, with periods of heavy rainfall.  The Commonwealth presented testimony from an accident reconstructionist who analyzed traffic data from the stretch of road where the collision occurred from the year prior and year after the May 18, 2020, wreck.  During that time frame, there were no other collisions or fatalities due to water issues.

---

[6] Kentucky Rules of Evidence.

Young sought to introduce testimony from the 911 operator about other weather-related incidents from other regions in the county to bolster his position that the weather caused him to wreck, and that the collision was unavoidable. None of the testimony was to be related to the particular area where he collided with Tumlin. Nor would it have been contrary to other witness accounts relative to the weather conditions present at the time of the wreck. Contrary to Young's assertions, the proposed testimony would not have tended to prove or disprove any element of the charged offenses and was therefore irrelevant and properly excluded. *Id.* There was no abuse of discretion in disallowing the 911 operator's testimony.

### III. Exclusion of mention of per se DUI law was correct.

Young next argues the trial court improperly excluded any mention of the per se DUI law and its requirement for obtaining blood testing within the two-hour period following cessation of operating a vehicle. He asserts the trial court's rulings deprived him of the right to present a complete defense.

Before discussing the merits of his assertions, we must first address whether Young properly preserved the issues for appellate review. In his brief, Young's statement of preservation references objections levied by the Commonwealth and the trial court's rulings on those objections. However, because a party must make known to the trial court the action the party desires the court to take, RCr[7] 9.22, an objection by the opposing party cannot

---

[7] Kentucky Rules of Criminal Procedure

17

suffice for proper preservation. Just as one defendant may not rely on a co-defendant's objection to preserve an error for appeal, *King v. Commonwealth*, 276 S.W.3d 270, 274-75 (Ky. 2009), a defendant likewise may not rely on an objection lodged by their adversary. Thus, we conclude Young did not properly preserve this issue. Nevertheless, because he has also requested review for palpable error, we shall address his concerns utilizing that standard.

RCr 10.26 authorizes an appellate court to review an unpreserved error as follows:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

A palpable error is "easily perceptible, plain, obvious, and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). To demonstrate manifest injustice, a party must show the "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). "'Manifest injustice' is error [that] so seriously affect[s] the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'" *Davidson v. Commonwealth*, 548 S.W.3d 255, 261 (Ky. 2018) (quoting *Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009)).

The relevant provisions of the law at issue are set forth in KRS 189A.010:

(1) A person shall not operate or be in physical control of a motor vehicle anywhere in this state:

18

(a) Having an alcohol concentration of 0.08 or more as measured by a scientifically reliable test or tests of a sample of the person's breath or blood taken within two (2) hours of cessation of operation or physical control of a motor vehicle;

(b) While under the influence of alcohol;

. . .

(e) While under the combined influence of alcohol and any other substance which impairs one's driving ability[.]

. . .

(2) With the exception of the results of the tests administered pursuant to KRS 189A.103(7):

(a) If the sample of the person's blood or breath that is used to determine the alcohol concentration thereof was obtained more than two (2) hours after cessation of operation or physical control of a motor vehicle, the results of the test or tests shall be inadmissible as evidence in a prosecution under subsection (1)(a) or (f) of this section. The results of the test or tests, however, may be admissible in a prosecution under subsection (1)(b) or (e) of this section[.]

Although he was not charged under the per se provisions of the DUI statute, Young asserts the Commonwealth prosecuted him as such by continuously inviting the jury to infer he was drunk at the time of the collision. Thus, he believes the trial court should have permitted him to rebut the Commonwealth's inferences by referencing the prohibition on using BAC results obtained more than two hours after cessation of the operation of a vehicle. Young asserts the trial court's ruling "hamstrung" his defense and constituted an abuse of discretion. We disagree.

19

Initially, we note that although Young now argues his BAC results were inadmissible, he raised no such objection at trial. He cannot "feed one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976), *overruled on other grounds by Wilburn v Commonwealth*, 312 S.W.3d 321 (Ky. 2010). "[T]his Court 'is without authority to review issues not raised in or decided by the trial court.'" *Dever v. Commonwealth*, 300 S.W.3d 198, 202 (Ky. App. 2009) (quoting *Reg'l Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989)). Perhaps realizing this fatal flaw in his position, he further contends the trial court erroneously prohibited him from discussing and questioning witnesses about a portion of a statute under which he was not even charged. His argument is without merit.

As Young concedes, he was not charged with per se DUI under KRS 189A.010(1)(a) which would have required only that the Commonwealth prove he was operating a vehicle with a BAC of 0.08 or more. Had he in fact been so charged, we would have little trouble agreeing with him that the results of his blood test which were obtained nearly three hours after the collision were inadmissible. However, Young was charged with impairment DUI under KRS 189A.010(1)(b) or (e), meaning the Commonwealth was required to prove he was under the influence of some substance which impaired his ability to operate a motor vehicle.

The plain language of KRS 189A.010(2)(a) permits the use of later-acquired testing results in prosecutions under sections (1)(b) or (e), the very provisions for which Young stood charged of violating. Thus, because he was

20

charged with impairment DUI, the fact that his blood was not collected for testing within the two-hour limit specified for per se DUI charges is of no moment. The Commonwealth was properly allowed to introduce the testing results.

Further, Young contends that the Commonwealth's inferences throughout trial that he was drunk, intoxicated, or impaired at the time of the collision meant it was treating the case as a per se DUI. However, his allegation fundamentally overlooks the fact that the Commonwealth was required under the statutory language to adduce proof—beyond the BAC testing results—that he was, in fact, impaired when he collided with Tumlin's vehicle. He was charged with intoxication DUI and wanton murder for causing a fatal collision when he was operating his vehicle while under the influence. The record establishes that is how the Commonwealth treated and prosecuted the case. Young's argument to the contrary is without merit.

The trial court correctly excluded mention of or arguments regarding the per se DUI provisions of KRS 189A.010. Any such evidence would have been irrelevant as it would not have made "the existence of any fact that is of consequence to the determination of the action more probable or less probable[.]" KRE 401. Furthermore, its introduction would have served only to pose a substantial risk of juror confusion. We discern no error, and certainly no palpable error in the trial court's evidentiary ruling.

**IV. A directed verdict was unwarranted on assault in the first degree.**

For his fourth allegation of error, Young contends he was entitled to a directed verdict on the charge of assault in the first degree relative to B.M. based on a failure of proof of serious physical injury. As previously stated, on a motion for directed verdict, the trial court must draw all fair and reasonable inferences in favor of the Commonwealth which must produce more than a mere scintilla of evidence to support the charges, and if it does not, only then is a directed verdict warranted. *Benham*, 816 S.W.2d at 187; *Taylor*, 617 S.W.3d at 324. Additionally, "an appellate court should not reverse unless it would be clearly unreasonable for a jury to find guilt." *Commonwealth v. Goss*, 428 S.W.3d 619, 625-26 (Ky. 2014) (quotation and citation omitted).

To be guilty of assault in the first degree, a defendant's actions must cause serious physical injury to the victim. KRS 508.010. "Serious physical injury" is defined in KRS 500.080(19) as a "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, prolonged loss or impairment of the function of any bodily organ, or eye damage or visual impairment." After a careful review of the record, we conclude the Commonwealth presented sufficient evidence that B.M. did, in fact, suffer a serious physical injury.

The Commonwealth presented testimony from Dr. Anna Doe, the emergency room physician who attended to B.M. upon her arrival at Meadowview following the collision. Dr. Doe indicated B.M. suffered a concussion, left wrist sprain, a break of the knee bone, and two broken

vertebrae. Although she could not specifically state these injuries could result in a prolonged impairment of health, she likewise could not rule out the possibility. Dr. Doe noted concussions lead to increased risks of encephalopathy, spine fractures can result in chronic back pain and mobility issues, and because B.M.'s back injuries occurred in soft bone they would never completely heal, making her more susceptible to injury with lesser amounts of trauma.

As summarized earlier, B.M. offered testimony recounting the detrimental impacts she continued to experience stemming from injuries sustained in the wreck. She referenced persistent knee issues requiring use of a brace, periodic back problems causing difficulty with bending, and occasional debilitating pain which at times caused her to remain bedridden. These ongoing physical difficulties had forced her to abandon her participation in dance and gymnastics activities and her plans to pursue a career in those fields.

"Although medical testimony may be the preferred method of proving the serious physical injury requirement," *Brooks v. Commonwealth*, 114 S.W.3d 818, 824 (Ky. 2003), "the victim was competent to testify about [her] own injuries." *Commonwealth v. Hocker,* 865 S.W.2d 323, 325 (Ky. 1993). In addition to the medical testimony, B.M.'s testimony provided important information about the extent and duration of her injuries.

Though Young attempts to discredit B.M. by focusing on the fact that she became pregnant, bore a son, and engaged in daily activities related to raising

23

a child, all within about a year following the collision, such assertions fail to erase the extent of her painful injuries and significant physical limitations. The law does not require the victim to be rendered an invalid before being considered to have suffered a serious physical injury.

This Court has previously held "pain is an 'impairment of health.' If the pain is substantial, but not prolonged, it constitutes a 'physical injury;' but if it is prolonged, then it is a 'serious physical injury.'" *Parson v. Commonwealth*, 144 S.W.3d 775, 787 (Ky. 2004). B.M.'s testimony regarding her continued pain came over three years after she was injured, which plainly constitutes a "prolonged" time period. The evidence presented at trial was sufficient to allow a reasonable juror to determine that B.M. suffered a serious physical injury, and thus sustain a conviction of assault in the first degree. Thus, Young was not entitled to a directed verdict as to that charge.

## V. A double jeopardy violation occurred.

For his final argument, Young asserts the jury instructions for wanton murder and DUI violated the prohibition against double jeopardy. He concedes this alleged error is unpreserved and requests palpable error review. "[D]ouble jeopardy violations can be addressed as palpable error because the nature of such errors is to create manifest injustice." *Cardine v. Commonwealth*, 283 S.W.3d 641, 652 (Ky. 2009).

The Fifth Amendment of the United States Constitution mandates that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." *See also* KY. CONST. §13. The Fifth Amendment and Section 13

24

are "identical in . . . their prohibition against double jeopardy." *Jordan v. Commonwealth*, 703 S.W.2d 870, 872 (Ky. 1985). Double jeopardy does not occur when a person is charged with two crimes arising from the same course of conduct, so long as each statute "requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). In *Commonwealth v. Burge*, 947 S.W.2d 805 (Ky. 1996), this Court reiterated the appropriate test relative to alleged double jeopardy violations. "We are to determine whether the act or transaction complained of constitutes a violation of two distinct statutes and, if it does, if each statute requires proof of a fact the other does not. Put differently, is one offense included within another?" *Id.* at 811 (internal citations omitted).

Young asserts the jury instruction for DUI does not contain an element of the crime which was not also included in the murder instruction, thereby creating a double jeopardy violation. We have previously analyzed and rejected a nearly identical argument. In *Bowling v. Commonwealth*, 553 S.W.3d 231 (Ky. 2018), this Court was tasked with determining whether the DUI and wanton murder statutes as charged in that case each required proof of a fact the other did not. We answered that question in the affirmative. Notably, the opinion in *Bowling* did not set out wording of the instructions which were given to the jury. However, in discussing the double jeopardy issue presented therein, it appears the wanton murder instruction contained no language relative to Bowling's alleged operation of his vehicle while being intoxicated as

25

the basis for his wanton state of mind. In fact, we noted "intoxication was but one factor which made Bowling's conduct wanton." *Id.* at 245.

The instructions given to the jury in the present matter paint a completely different picture. Instruction No. 4 concerned the wanton murder charge and read as follows:

> You will find the Defendant guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about May 18, 2020 and before the finding of the Indictment herein, he killed Jessica Tumlin by wantonly operating a motor vehicle while under the influence of alcohol.
>
> AND
>
> B. That in so doing, he was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of Jessica Tumlin under circumstances manifesting an extreme indifference to human life.

Young's DUI charge was addressed in Instruction No. 12 and stated as follows:

> You will find the Defendant guilty of Operating a Motor Vehicle While Under the Influence of Alcohol or Other Substance Which Impairs Driving Ability if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about May 18, 2020, and within 12 months before the finding of the Indictment herein he operated a motor vehicle.
>
> AND
>
> B. That while doing so, he was under the influence of alcohol or any other substance which may impair one's driving ability.
>
> AND
>
> C. That he was operating a motor vehicle that caused an accident resulting in death or serious physical injury.

26

As presented in the instructions, to find Young guilty of DUI, the jury was required to conclude he was operating a motor vehicle on or about May 18, 2020, while under the influence of alcohol or other impairing substance, and he caused an accident resulting in death or serious physical injury. To convict Young of wanton murder, the jury was required to conclude he caused Tumlin's death on May 18, 2020, when he wantonly operated a motor vehicle while under the influence of alcohol and manifested an extreme indifference to human life in so doing. While the DUI instruction contained no requirement that he was operating his vehicle under circumstances manifesting an extreme indifference to human life, the remaining elements were all contained within the murder instruction. It therefore follows that once the Commonwealth proved the specific conduct required to convict Young of wanton murder under the instruction, it had necessarily proved the conduct necessary to convict him of DUI.

Because the DUI required proof of no fact beyond those required for the wanton murder, a double jeopardy violation occurred. *Burge*, 947 S.W.2d at 811. Therefore, the proper remedy is to vacate the lesser offense of DUI. *Brown v. Commonwealth*, 297 S.W.3d 557, 563 (Ky. 2009); *Clark v. Commonwealth*, 267 S.W.3d 668, 678 (Ky. 2008).

For the foregoing reasons, the judgment of conviction and sentence of the Lewis Circuit Court is affirmed in part, vacated in part, and remanded for entry of a new judgment consistent herewith.

All sitting. Bisig, Conley, Goodwine, Keller, and Thompson, JJ., concur.

Lambert, C.J., concurs in part and dissents in part without separate opinion.

COUNSEL FOR APPELLANT:

Kayley Barnes
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

J. Grant Burdette
Assistant Attorney General